*Attorney Grievance Commission of Maryland v. Eugene Ignatius Kane, Jr.*, Miscellaneous Docket AG No. 5, September Term, 2018

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION**

Respondent Eugene Ignatius Kane, Jr., violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1, 1.2, 1.3, 1.4, 1.7, 1.16, 3.1, 3.3, 3.4, 8.1, and 8.4(a) and (d). These violations arose from Respondent's misconduct during his representation of clients in two separate matters, as well as in his own personal bankruptcy filings and tax return filings. Taken together, Respondent's violations warrant the sanction of indefinite suspension.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 5

September Term, 2018

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

EUGENE IGNATIUS KANE, JR.

Barbera, C.J.
*Greene
McDonald
Watts
Hotten
Booth
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.

Filed: August 26, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.



Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

This attorney discipline matter against Respondent, Eugene Ignatius Kane, Jr. ("Respondent" or "Mr. Kane") arises out of Mr. Kane's representation of two clients, Mrs. Lonergan and Mr. Arvin, in separate matters, as well as his personal bankruptcy filings in the United States Bankruptcy Court for the District of Maryland, his personal tax return filings and the related investigations of the Attorney Grievance Commission ("AGC").

On May 1, 2018, the AGC, through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Mr. Kane alleging that he had violated several provisions of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). Specifically, Bar Counsel charged him with violating Rules 1.1 (Competence), 1.2 (Scope of Representation and Allocation of Authority Between Client and Attorney), 1.3 (Diligence), 1.4 (Communication), 1.7 (Conflict of Interest: General Rule), 1.15 (Safekeeping Property), 1.16 (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.3 (Candor Toward the Tribunal), 3.4 (Fairness to Opposing Party and Counsel), 8.1 (Bar Admission and Disciplinary Matters), and 8.4 (Misconduct) of the Maryland Lawyers' Rules of Professional Conduct.[1]  Mr. Kane was also charged with violating Maryland Rule 16-606.1[2]

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified in Title 19 of the Maryland Rules. Mr. Kane's misconduct occurred before and after the recodification of the rules of professional conduct.  Because Mr. Kane violated the rules under both the MLRPC and the MARPC, and there is no substantive difference in the two codifications, we shall use the shorter designations of the MLRPC throughout this opinion, *e.g.*, "Rule 8.4" rather than "Maryland Rule 19-308.4."

[2] Effective July 1, 2016, this rule was re-codified as Maryland Rule 19-407.

Pursuant to Maryland Rule 19-722(a), this Court designated the Honorable David W. Lease of the Circuit Court for Montgomery County to conduct an evidentiary hearing (the "attorney grievance hearing" or "hearing") regarding the alleged violations, and to provide findings of fact and conclusions of law pursuant to Maryland Rule 19-272. The attorney grievance hearing was held between December 10, 2018 and December 14, 2018. Mr. Kane represented himself throughout the hearing.

The hearing judge issued Findings of Fact and Conclusions of Law on March 14, 2019, in which he found by clear and convincing evidence that Mr. Kane violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.7, 1.16, 3.1, 3.3, 3.4, 8.1, and 8.4.[3] The hearing judge did not find a violation of Maryland Rule 16-606.1.

Bar Counsel filed one exception, which was to the hearing judge's failure to find Mr. Kane's prior warning by the AGC to be an aggravating factor. Mr. Kane filed a number of exceptions to both the hearing judge's findings of fact, as well as his conclusions of law.[4]

---

[3] Following the hearing, Bar Counsel withdrew the allegation that Mr. Kane violated Rule 1.15(e).

[4] Mr. Kane's pleading titled "Respondent's Exceptions and Recommendations" ("Exceptions") contains a section titled "Introduction," which sets forth many facts and conclusions not contained in the record or found by the hearing judge. In his Exceptions, Mr. Kane essentially asks this Court to accept his version of the facts and overturn the hearing judge's credibility determinations. To the extent that Mr. Kane's "Introduction" contains exceptions to facts that are not specifically discussed below, they are overruled. As an initial matter, it should be noted that a "factual finding is not clearly erroneous '[i]f there is any competent material evidence to support [it].'" *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16 (2014) (alterations in original) (quoting *YIVO Inst. for Jewish Research v. Zaleski*, 386 Md. 654, 663 (2005)). "The hearing judge is entitled to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings

Concerning the appropriate sanction, Bar Counsel recommends that Mr. Kane be disbarred for his violations of the MLRPC. Mr. Kane requests that this Court impose a reprimand as the appropriate sanction. On June 6, 2019, this Court heard oral arguments in this matter. Mr. Kane appeared and was represented by counsel. We address the parties' exceptions below. For the reasons set forth herein, we hold that Mr. Kane's violations warrant the sanction of indefinite suspension.

## I.     The Hearing Judge's Findings of Fact

When no exception is made to a hearing judge's finding of fact, we accept it as established. Md. Rule 19-741(b)(2)(A). When a party excepts to a finding, we must determine whether the finding is established by the requisite standard of proof—in the case of an allegation of misconduct, clear and convincing evidence. Md. Rules 19-741(b)(2)(B), 19-727(c). The standard of review for a hearing judge's factual findings where a party excepts to the findings is the clearly erroneous standard. *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016) (cleaned up). We summarize the hearing judge's findings of fact and other undisputed matters in the record. We also address any exceptions in relation to the findings to which they pertain as follows.

---

of fact." *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50 (2006) (quoting *Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 253 (2000)). Additionally, as set forth *infra*, although Mr. Kane notes many exceptions to both findings of fact and conclusions of law made by the hearing judge, he admits in many instances that he engaged in the conduct upon which the violation is based.

3

### *Mr. Kane's Credentials and Practice*[5]

Mr. Kane graduated from Georgetown Law School in 1983 and was admitted to the Maryland Bar on December 20, 1983. He is a solo practitioner with a virtual office located in Montgomery County, Maryland. While Mr. Kane's mail was delivered to his virtual office, he conducted meetings in public places, such as restaurants and coffee shops, and otherwise worked from his home, also located in Montgomery County. Mr. Kane did not have any administrative support, other than a receptionist at his virtual office.

### *The Lonergan Matter*

In 2006, Brian Lonergan and his wife ("Mrs. Lonergan") purchased a PostNet franchise. Soon thereafter, Mr. Lonergan established Montgomery Business Solutions, LLC ("MBS") to operate the printing and shipping franchise. MBS traded under the names PostNet and PostNet MD 112 (hereinafter "PostNet"). Mr. Lonergan was the sole member and owner of MBS and managed the day-to-day operations of the store. Mrs. Lonergan, an attorney, was not involved in the operation of the MBS business venture.

---

[5] Mr. Kane excepts to the fact that, in the hearing judge's summary of his practice, the hearing judge did not find that Mr. Kane "was also experiencing some personal financial difficulties with his mortgage lender—Wells Fargo—which necessitated the filing of personal bankruptcy petitions by [] [Mr. Kane]." We overrule this exception. Although the hearing judge did not incorporate this finding into his initial description of Mr. Kane's practice, he found that, on the eve of Mr. Kane's five personal bankruptcy filings, Mr. Kane was facing a foreclosure on his home. Mr. Kane's serial bankruptcy filings related to his attempts to negotiate his mortgage with his lender, a fact noted by the hearing judge in his written Findings of Fact and Conclusions of Law.

1. <u>PNC v. MBS</u>

In November 2010, Mr. Lonergan retained Mr. Kane to represent MBS in connection with collection efforts by PNC Merchant Services Company ("PNC") after it was discovered that MBS had been the target of a credit card scam. The transaction at issue involved a large order placed by a third-party that was paid for with a stolen credit card. PNC claimed that MBS owed approximately $50,000 due to a charge back to MBS's account after the transaction was determined to have been fraudulent. PNC cancelled MBS's merchant account and placed MBS on a "blacklist," preventing MBS from conducting credit card transactions.

During their initial meeting, Mr. Kane indicated that he could attempt to negotiate a resolution with PNC. Mr. Lonergan, through PostNet, retained Mr. Kane. Mr. Lonergan testified that he did not recall discussing an hourly rate with Mr. Kane, but he understood that Mr. Kane would charge him an hourly rate for his services.

Mr. Kane attempted to negotiate a resolution with PNC, to no avail. PNC would not agree to remove MBS from the blacklist, which had the effect of preventing MBS from accepting credit card payments from its customers. As a result, in September of 2011, PNC filed a complaint against MBS in the Circuit Court for Montgomery County. Prior to trial, PNC offered to settle the matter by removing MBS from the blacklist in exchange for a payment of $50,719.25. It became apparent to Mr. Kane that MBS had no defense, so he investigated other options.

In early June of 2012, Mr. Kane advised Mr. Lonergan that he had consulted with a bankruptcy attorney, who recommended that they create a new entity to operate PostNet

5

so that the business could continue to operate.[6]  Mr. Kane indicated that the new entity would be able to process credit cards.  Mrs. Lonergan, skeptical of this advice, asked Mr. Kane whether his proposed course of action could be successful, and whether there would be any associated risk.  Mr. Kane told Mrs. Lonergan that there was nothing wrong with attempting to operate under the new entity, although it might not be successful.  Mr. Kane advised that the only potential risk was that the credit card processing company might discover a connection between MBS and the newly formed company, which could lead to the loss of the filing fees paid to create the new entity.

Based upon Mr. Kane's advice, the Lonergans agreed that Mr. Lonergan would form a new company.  The day before the PNC trial, Mr. Kane filed articles of organization with the Maryland State Department of Assessment and Taxation ("SDAT") establishing Matrix Printing, LLC ("Matrix").  Matrix was registered to the same address as MBS and was intended to control and continue MBS's printing and shipping franchise.

The following day, Mr. Kane appeared in the circuit court on behalf of MBS.  Mr. Kane advised PNC and the court that MBS would not contest the matter.  The circuit court entered judgment in favor of PNC against MBS in the amount of $50,719.25.  Mr. Kane

---

[6] Mr. Kane excepted to this finding and contends that the hearing judge should have found that he discussed the Lonergan litigation strategies with two experienced lawyers. We overrule this exception.  The hearing judge specifically found that Mr. Kane discussed this matter with an experienced bankruptcy attorney.  The hearing judge is entitled to significant deference in assessing the credibility of witnesses and picking and choosing from the evidence presented and the inferences to be drawn from that evidence. *See Attorney Grievance Comm'n v. Page*, 430 Md. 602, 627 (2013).  Moreover, as discussed *infra*, the hearing judge did not find that Mr. Kane violated any Rule in connection with his recommendations and advice on the formation of the new entity.

did not inform PNC or the circuit court of the formation of Matrix prior to the entry of the judgment; however, there was no duty to disclose such information.

PNC commenced efforts to collect on the judgment and garnished MBS's bank accounts. Mr. Kane advised Mr. Lonergan that MBS should explore filing bankruptcy because PNC was unrelenting. Mrs. Lonergan requested a telephone call with Mr. Kane regarding the potential bankruptcy filing. She again asked if there was risk or anything illegal about the creation of Matrix. Mr. Kane was adamant that there was no risk. Mr. Kane spoke with MBS's accountant, Mr. Burstein, as well as a bankruptcy attorney, and they both agreed with his recommendation.

### 2. MBS Chapter 7 Bankruptcy

Mr. Kane filed a Chapter 7 Bankruptcy petition on behalf of MBS in the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court") in March of 2013. The filing contained numerous deficiencies, including the failure to file many schedules. On April 2, 2013, the Bankruptcy Court dismissed the petition because the deficiencies had not been cured.

The following day, Mr. Kane filed an appearance of counsel and an affidavit for explanation of non-compliance and disclosure, wherein Mr. Kane advised that he did not have an account to electronically file MBS's pleadings. Mr. Kane also filed a motion to reinstate Chapter 7, associated schedules, and a statement of financial affairs. Mr. Kane's filings once again contained deficiencies. He failed to include the required declaration from the debtor or to file a certificate of service as required by the bankruptcy rules.

The Bankruptcy Trustee ("Trustee") retained counsel, Jeffrey M. Orenstein, to investigate MBS and Matrix. The bankruptcy judge granted the Trustee's motion to vacate the dismissal of the bankruptcy, which allowed the Trustee to continue his investigation. In the course of his investigation, Mr. Orenstein reviewed the bankruptcy petition prepared by Mr. Kane on behalf of MBS. Mr. Orenstein noted that the petition stated that MBS had no assets; however, there was no disclosure of any transfers by MBS or any closed bank accounts. Mr. Orenstein investigated the PNC litigation and concluded that there were potential claims that could be pursued on behalf of the bankruptcy estate.[7]

On February 2, 2014, Mr. Kane emailed Mr. Lonergan and advised that there were no updates in the Chapter 7 bankruptcy case. In this email, Mr. Kane inquired about how he was going to be compensated. At no time between November 2010 and February 2014 did Mr. Kane provide an invoice or billing statement in connection with his representation of MBS. Mr. Kane stated that "if [I] did an itemized bill based on time it would be excessive. Thoughts on alternatives to hourly arrangement?" Mr. Kane and Mr. Lonergan agreed on a total fee of $12,000 with $5,000 to be paid immediately and the remainder in monthly installments of $1,000. Mr. Lonergan's father sent two checks totaling $5,000 on behalf of Mr. Lonergan in February of 2014. One check in the amount of $2,000 referenced

---

[7] Mr. Kane excepts to the hearing judge's findings concerning MBS's bankruptcy and contends that the hearing judge "should have found that the [R]espondent advised Mr. Lonergan and the [Bankruptcy] Trustee that the [R]espondent was not an experienced bankruptcy petitioner." We overrule this exception. Even assuming that Mr. Kane advised the Lonergans and the Bankruptcy Court of his lack of experience, Mr. Kane is required to possess basic minimum standards of competence required by Rule 1.1 when representing his clients, which includes ensuring that schedules comply with the minimal bankruptcy requirements and that they are accurate.

"Services/PostNet."  The other check in the amount of $3,000 referenced "PostNet Legal Services."

On April 15, 2014, Mr. Lonergan requested a statement representing the agreed-upon amount owed.  Mr. Kane provided Mr. Lonergan an invoice that day, which included time spent on the matter through March 9, 2011, as well as a "general entry" in the amount of $4,776.68 on April 15, 2014, which brought the total invoice amount of $11,999.  The invoice did not account for the February 2014 payments.  Mr. Lonergan testified that his understanding was that the $12,000 would cover the case to its conclusion.  Mr. Kane testified that he had a clear understanding that he would handle the bankruptcy matter without charge.

3. <u>Adversary Proceeding Against MBS, Mr. Lonergan, Mrs. Lonergan, and Mr. Kane</u>

The Trustee's investigation led to the filing of a Complaint to Avoid Transfers, for Declaratory Judgment, and to Recover Monetary Damages against Matrix, Mr. Lonergan, Mrs. Lonergan, and Mr. Kane.  The Complaint, which was filed in June of 2014 in the Bankruptcy Court, consisted of ten counts, including civil conspiracy and a fraudulent conveyance based on the transfers allegedly made by the Lonergans and Mr. Kane between MBS and Matrix on the eve of trial in the PNC case (the "Adversary Proceeding").

Mr. Kane discussed the Adversary Proceeding with Mr. Lonergan and advised him that he believed that the case was defensible because Mr. Kane had spoken to a bankruptcy attorney and to MBS's accountant prior to creating Matrix and filing MBS's bankruptcy.  In August of 2014, Mr. Kane filed a Motion to Dismiss Complaint, or Alternatively, a Motion

9

for More Definite Statement of Same on behalf of Matrix, the Lonergans, and himself. Mr. Kane had not discussed the complaint or his motion with Mrs. Lonergan, nor did he have her authorization to take any action on her behalf.

From the outset of the Adversary Proceeding, counsel for the Trustee, Mr. Orenstein, had several discussions with Mr. Kane wherein he expressed concern regarding Mr. Kane's ongoing representation of the Lonergans and Matrix. Specifically, Mr. Orenstein expressed concern about the fact that Mr. Kane was a named defendant against whom the Trustee was seeking damages, and that he would be a primary witness in the case. Mr. Orenstein told Mr. Kane several times that he did not believe that Mr. Kane could represent the Lonergans or Matrix in the Adversary Proceeding because Mr. Kane was also a defendant.

In August of 2014, the Bankruptcy Court held a pretrial hearing. Mr. Kane appeared on behalf of the defendants. As before, Mr. Kane had not discussed the complaint or the hearing with Mrs. Lonergan, nor was he authorized to appear on her behalf.[8] The Lonergans were not present. At the hearing, the Trustee advised the Bankruptcy Court that Mr. Kane would be a witness and therefore, could not serve as counsel for the Lonergans or Matrix. After the hearing, Mr. Kane emailed Mr. Lonergan and informed him that the Trustee intended to file a motion to disqualify him as counsel in the case because a lawyer cannot be

---

[8] Mr. Kane excepts to the hearing judge's finding. He contends that the hearing judge should have found that Mr. Kane believed that Mr. Lonergan was advising Mrs. Lonergan on the status of the Adversary Proceeding and that Mr. Kane was not communicating with Mrs. Lonergan at Mr. Lonergan's request because of serious marital issues. We overrule this exception. Mr. Kane had a duty to discuss the Adversary Proceeding with Mrs. Lonergan, and the fact that Mr. Kane believed that the Adversary Proceeding was creating marital discord between his two clients only heightened this duty.

a witness and act as counsel at trial. Mr. Kane stated that: "[w]e will wait to see what the Trustee files." Mr. Kane did not withdraw as counsel for the Lonergans and Matrix in the Adversary Proceeding at that time, nor did he discuss his conflict of interest with the Lonergans.

In September of 2014, the Trustee served interrogatories and requests for production of documents on each of the Lonergans. In November of 2014, the Trustee filed an amended complaint, wherein he added claims against the Lonergans and Mr. Kane related to the alleged fraudulent conveyance. Mr. Kane failed to communicate in any manner with Mrs. Lonergan about the amended complaint.

On December 12, 2014—more than two months after the discovery had been propounded—Mr. Kane emailed Mr. Lonergan and asked how he was doing on the "discovery preparation." On December 16, Mr. Orenstein wrote to Mr. Kane concerning the overdue discovery responses and stated that if responses were not received on or before December 20, the Trustee would seek sanctions against the Lonergans. That same day, Mr. Kane emailed Mr. Orenstein and stated: "Client has been working on the responses. This is a very busy time of the year for the company. Anticipate responses shortly." At that time, Mr. Kane still had not had any communications with Mrs. Lonergan about the lawsuit that had been filed in which she was a named defendant, the outstanding discovery requests, or the response deadline.

On January 4, 2015, Mr. Kane emailed Mr. Lonergan about the discovery responses. Mr. Kane indicated that he was "very certain" that Mr. Orenstein was "going to insist [they]

11

file the discovery responses this week." Mr. Kane did not advise Mr. Lonergan that the responses were overdue or of the content of Mr. Orenstein's December 16 letter.

In January of 2015, Mr. Kane filed an Answer to the Amended Complaint on behalf of all the defendants, including himself. Again, Mr. Kane was not authorized by Mrs. Lonergan to take any action on her behalf.

On February 3, 2015, Mr. Orenstein once again wrote to Mr. Kane regarding the overdue discovery responses. Mr. Orenstein advised that if discovery responses were not received by February 10, he would file a motion for sanctions. On February 4, Mr. Kane emailed Mr. Lonergan and indicated that they needed to "resume" their efforts on the discovery responses. Mr. Kane stated that he had a new deadline of February 10 to submit discovery responses. Mr. Kane did not advise Mr. Lonergan that the Trustee intended to file a motion for sanctions if responses were not received by February 10. The deadline passed without any further communication between Mr. Kane and Mr. Orenstein.

Having received no response from Mr. Kane to his February 4 email, Mr. Orenstein filed a motion for sanctions and motion to compel discovery against the Lonergans on February 16. On February 17, Mr. Kane, for the first time, emailed draft responses to Mr. Lonergan and requested that Mr. and Mrs. Lonergan review and sign the responses. Mr. Kane did not advise the Lonergans of the pending motion for sanctions that had been filed against them. On March 4, Mr. Kane emailed Mr. Lonergan and inquired about the status of the responses. Again, Mr. Kane failed to advise Mr. Lonergan of the pending motion for sanctions. On March 7, Mr. Kane emailed Mr. Lonergan about the discovery

12

responses and advised that a "motion to compel" had been filed. Mr. Kane stated that he wanted to get the discovery filed to "keep from sanctions for non-filing."

As of March 7, Mr. Kane had failed to have any direct communications with Mrs. Lonergan about the discovery and failed to advise either of the Lonergans that a pending motion for sanctions had been filed against them three weeks earlier.

The Bankruptcy Court scheduled a hearing for March 23, 2015. On March 19, Mr. Kane finally provided complete discovery responses to Mr. Orenstein. Mr. Kane filed a response to the motion for sanctions on the day before the hearing.

On March 23, the Bankruptcy Court heard the Trustee's motion for sanctions. Mr. Kane appeared on behalf of the Lonergans, who were not present. At the conclusion of the hearing, the Bankruptcy Court granted the Trustee's motion. After the hearing, Mr. Kane failed to advise the Lonergans that sanctions had been entered against them. Instead, Mr. Kane sent Mr. Lonergan an email advising him that the Bankruptcy Court had granted the motion to compel and requested "the Trustee provide an estimate of the costs of preparing the motion and will [sic] us to negotiate, if possible, a reasonable reimbursement for the cost of the motion." On April 17, 2015, the Bankruptcy Court entered an Order of Sanctions against the Lonergans in the amount of $3,197.25. Once again, Mr. Kane failed to advise Mrs. Lonergan about either the Court's grant of the motion to compel or the sanctions order.

In the fall of 2015—over a year after the initial case was filed—Mr. Kane advised Mr. Lonergan that the Lonergans needed to retain new counsel because the Trustee intended to call Mr. Kane as a witness at trial. The Lonergans retained Michael P. Coyle as successor

13

counsel. When the Lonergans consulted with Mr. Coyle, Mrs. Lonergan learned, for the first time, that she was a named defendant in the Adversary Proceeding and that sanctions had been entered against her.

Mr. Coyle recommended that the Lonergans attempt to negotiate a settlement with the Trustee. Prior to Mr. Coyle's involvement in the case there had not been any legitimate settlement discussions between Mr. Orenstein and Mr. Kane.[9] Mr. Coyle entered his appearance and negotiated a settlement with the Trustee prior to trial. The terms of the settlement required that the Lonergans and Matrix pay approximately $16,500 and that the Lonergans pay an additional $3,197.25 as sanctions associated with the parties' discovery violations. Mr. Kane never reimbursed the Lonergans for the amounts paid toward the sanctions.

Trial proceeded on January 12, 2016, with Mr. Kane as the only defendant. The Trustee and Mr. Kane each made opening statements and conducted direct and cross-examination of Mr. Lonergan. During the lunch break, Mr. Kane, for the first time, advised Mr. Orenstein that he had filed a personal Chapter 13 bankruptcy petition in September of 2015. Mr. Orenstein immediately advised the bankruptcy judge of Mr. Kane's Chapter 13 filing, which required that the proceedings against him be stayed immediately. The following exchange occurred with the bankruptcy judge:

> **MR. ORENSTEIN:** Your Honor, I have to apologize to you and everybody else in this courtroom for wasting your time because Mr. Kane

---

[9] Mr. Kane excepts to the hearing judge's finding that he failed to engage in legitimate settlement discussions, and contends that he did in fact, have discussions, but to no avail. Based upon our independent review of the record, Mr. Kane's exception to this finding is overruled. The hearing judge's finding is not clearly erroneous.

just informed me that in September[,] he filed a Chapter 13 bankruptcy petition.

**THE COURT:** Oh, no.

**MR. ORENSTEIN:** And this case, as a result, is stayed as to him, although the trustee was not listed as a creditor and we knew nothing about that until just this moment. And you know how much time and effort and money we have spent on this because Mr. Kane has, once again, thrown us into the deep end. But we cannot, as a matter of law, go forward with this trial at this point.

**MR. KANE:** Let me respond to that. I have been trying to - - first of all, for personal privacy reasons, I have been trying to keep that out of any and all professional matters. That's number one for my rationale.

Number two, once I became the sole defendant, and I asked counsel at the break, because we haven't had any discussions since they left me as the sole defendant, monetarily, what are they seeking from me. Okay? I was given a number, okay, and I said that's not even workable for me. The difficulty for me is that I'm trying to, as you can see, from September - - I'll give you the case number if you need it, Your Honor.

**THE COURT:** Sure.

**MR. KANE:** It's 15-22874. It's a mortgage issue. I'm trying to work out a mortgage issue with the mortgage company, and I'm trying to resolve that issue on modification with Wells Fargo. And that's what I've been dealing. So[,] on a personal note, I believed, and still do believe that the only financial exposure, if there is any in this case, is it relates to my former clients, not for me. I've always provided professional advice.

**THE COURT:** It doesn't matter. You've been sued[,] and you should have advised the Court that you're a Chapter 13. People who are - - it stays the matter. And he could have made some other decisions, either about how he was going to settle it because you're in Chapter 13, or chose not to pursue it, or whatever, or you could have agreed on a claim in the Chapter 13 case.

But to have gone forward when there is an automatic stay that goes into effect, and to have cause these people and the Court all of this time is - -

**MR. KANE:** But the Court was also clear, on several days, that you wanted this case tried today.

**THE COURT:** But is wasn't going to be - -

**MR. KANE:** And I wasn't going to let that interfere.

**THE COURT:** It can't be - -

**MR. KANE:** I didn't want my personal life to interfere.

**THE COURT:** It can't be tried if there's an automatic stay. Even if I'm the judge, and I don't know that I am in the 13, there is an automatic stay that goes into effect, and it can't be pursued unless they file a motion for relief from automatic stay. They can't do it, ethically.

15

All right. Well, we're done for today; that's for sure. Let's just wrap this up.

* * *

**THE COURT:** Okay. Are they listed as a creditor? They didn't get notice.

**MR. KANE:** No.

**THE COURT:** Oh.

**MR. KANE:** I list two creditors, Your Honor, the first and second mortgage; that's the only people - -

**THE COURT:** They're a - -

**MR. KANE:** I'm going to have to amend at this point. I understand I'm going to have to do all of that now that they're made me a direct point of contact in this case. I thought it was peripheral; that's my perception of it. But apparently the trustee doesn't think so.

**THE COURT:** Well, it's not a matter of "apparently the trustee"; it's the law. Read Section 362 of the Bankruptcy Code.

**MR. KANE:** But I - - you know, honestly, Your Honor, I get where - - you know, if I get somebody that sues me for a court reporter bill for $300, I don't list them on any financial reportings, and I do with any venue. Those are just minor things. I saw my role, personally, as far as personal exposure, as minor.

**THE COURT:** It doesn't matter; it's still a claim. It needed to have been listed.

**MR. KANE:** All right.

At the attorney grievance hearing, Mr. Kane advanced various reasons for his failure to disclose the Adversary Proceeding and list the Trustee as an unsecured creditor in his bankruptcy petition. The hearing judge found that Mr. Kane's reasons for purposely omitting the listing of the Adversary Proceeding were not permissible. The hearing judge determined that Mr. Kane knowingly and intentionally withheld material information from the Bankruptcy Court by failing to identify the Adversary Proceeding. The hearing judge found that Mr. Kane was aware that he needed to list the claim. Mr. Kane acknowledged the willful nature of his omission to list the Adversary Proceeding in his personal

16

bankruptcy filing when he advised the Bankruptcy Court that he failed to disclose the claim because "I have been trying to keep that out of any and all professional matters. . . ."

Subsequently, the automatic stay was lifted, and the Adversary Proceeding against Mr. Kane went forward. The Bankruptcy Court found for Mr. Kane and entered a judgment in his favor.

Mr. Kane excepts to the factual finding that he "knowingly and intentionally filed a false bankruptcy petition," claiming that he firmly believed that he did not have to list the Adversary Proceeding because it was an "inchoate claim." Although this may have been Mr. Kane's belief, it was nonetheless incorrect. And the record described above shows that Mr. Kane's omission was intentional. Based upon the facts outlined above, the hearing judge's finding is not clearly erroneous. We overrule Mr. Kane's exception.

4. Bar Counsel Investigation into Lonergan Complaint

Mrs. Lonergan filed a complaint with the Attorney Grievance Commission in June of 2016. Bar Counsel forwarded the complaint to Mr. Kane on September 6 and requested that Kane provide a written response within fifteen days. When Mr. Kane did not respond to Bar Counsel's request, Counsel sent a follow-up request asking Mr. Kane to respond within ten days. On October 19, 2016, Mr. Kane represented to Bar Counsel that his representation of MBS was on a *pro bono* basis.[10]

---

[10] As will be discussed *infra*, in the Conclusions of Law relating to Rules 3.3 and 8.1, the hearing judge found that Mr. Kane "believed he was proceeding on a *pro bono* basis given his thought process." Because the court was not persuaded that there was clear and convincing evidence that Mr. Kane knowingly made a false statement, the hearing judge found that Mr. Kane did not violate Rule 8.1(a) based upon his testimony regarding work done on a *pro bono* basis.

17

Bar Counsel requested that within ten days, Mr. Kane provide "additional information and documentation" including "copies of all records created and maintained for the receipt, maintenance and disbursement of funds from the Lonergans, MBS and Matrix," as well as "copies of cancelled checks and a full accounting of any payments" received. Mr. Kane neglected to timely respond to this request.

Mrs. Lonergan provided supplemental information to Bar Counsel at the end of October 2016. On November 16, Bar Counsel requested that Mr. Kane respond in writing, within seven days, to the new information provided by Mrs. Lonergan. Three weeks later, Mr. Kane provided a compact disc containing electronic files related to his representation of the Lonergans, MBS, and Matrix. However, the information provided by Mr. Kane did not include "records associated with the receipt, maintenance and disbursement of client funds" that had been requested by Bar Counsel. Mr. Kane ultimately provided Bar Counsel with a photograph of the front of two checks but failed to produce a copy of another check in the amount of $1,000 that he received from Matrix.

Mr. Kane excepts to the hearing judge's findings in connection with Bar Counsel's investigation into Mrs. Lonergan's complaint, arguing that "[t]he Court should have found that the record supports a finding that the [R]espondent's family issues (serious illness of his in-laws) delayed his response to Bar Counsel's inquiries and that the [R]espondent ultimately appropriately engaged with Bar Counsel." Mr. Kane's exception is overruled. The hearing judge's failure to make a specific finding that Mr. Kane's delayed response was caused by his in-laws' failing health is not clearly erroneous. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 385 (2001) ("Exceptions to the findings of our

18

hearing judges in attorney discipline matters should be directed to facts that he [or she] finds, or facts that he [or she] expressly rejects or expressly refuses to consider."). As discussed *infra,* as a mitigating factor in Mr. Kane's favor, the hearing judge found that Mr. Kane's in-laws' failing health affected Mr. Kane emotionally and required significant time and energy for their care.

### *Mr. Kane's Personal Bankruptcy Filings and Tax Returns*

1. <u>Serial Bankruptcy Filings</u>

Mr. Kane filed five individual voluntary bankruptcy petitions under Chapters 7 and 13 between February 26, 2014, and April 4, 2017. Each of the bankruptcy petitions were filed "on the eve of a foreclosure on his home" and were signed under the penalty of perjury. The hearing judge found that Mr. Kane's "frequent and unsuccessful filings constituted an abuse of the bankruptcy process."

Mr. Kane filed his first Chapter 13 bankruptcy petition in February of 2014. The petition, schedules, and income statement were all deficient and contained incorrect or misleading information. Specifically, Mr. Kane reported significantly less money in his checking account than his bank records demonstrated. Other items disclosed included monthly expenses, household furnishings, wearing apparel, and a vehicle, all of which were inconsistently reported on later bankruptcy filings. The Bankruptcy Court denied Mr. Kane's Chapter 13 plan with leave to amend; however, Mr. Kane neglected to file an amended plan. In July of 2014, the Bankruptcy Court dismissed this bankruptcy petition.

When Mr. Kane initiated his second Chapter 13 filing in September of 2015, the Adversary Proceeding to which he was a party with the Lonergans and Matrix was pending

19

in Bankruptcy Court. As noted *supra*, Mr. Kane failed to disclose the Adversary Proceeding or list the Trustee as an unsecured creditor. In addition to these omissions, Mr. Kane's petition, schedules, and income statement again were incomplete and contained false or misleading information. At the attorney grievance hearing, Mr. Orenstein testified that the information that Mr. Kane failed to provide on his schedules included, but was not limited to, information relating to his bank account, ownership interest in his law practice, and office lease. The Bankruptcy Court dismissed this Chapter 13 petition in April of 2016, determining that Mr. Kane had "'not properly prosecuted [the] action' either by electing to convert it from a Chapter 13 case to another chapter or dismissing the action."

Approximately seven weeks later, in June of 2016, Mr. Kane filed a third Chapter 13 petition. Less than a month later, Mr. Kane filed amended schedules on which he listed claims for household goods and furnishings, electronics, and clothes. On Schedule E/F, he also listed unsecured creditors whom he had not previously disclosed on his 2014 or 2015 bankruptcy filings. Additionally, on Schedule J, Mr. Kane listed expenses for "telephone, cell phone, internet, satellite and cable; food and housekeeping; clothing and laundry and dry cleaning; personal care products and services; medical and dental expenses; travel expenses; entertainment; charitable contributions and religious donations; and insurance[,]" none of which he had listed on his two earlier bankruptcy petitions. This petition was dismissed in December of 2016.

Less than two months later, Mr. Kane filed a fourth bankruptcy petition for Chapter 7 bankruptcy. However, the same day, Mr. Kane filed a motion requesting that the case be converted to a Chapter 13 bankruptcy. This motion was granted. Nonetheless, the petition

was dismissed in February of 2017 due to Mr. Kane's failure to complete filings required by the Bankruptcy Court.

Once again, less than two months after his last petition was dismissed, Mr. Kane filed a fifth Chapter 13 petition in April of 2017. The Chapter 13 Trustee filed a Motion to Dismiss with Prejudice for Bad Faith. In Mr. Kane's response to this motion, he admitted that his serial bankruptcy filings were commenced in an effort to obtain a loan modification. The Trustee's motion was granted; however, the order was later vacated after Mr. Kane established that he was current on his plan payments. Ultimately, the Chapter 13 Plan was denied, and in February of 2018, the Chapter 13 petition was dismissed for failure to properly prosecute the action.[11]

The hearing judge found that Mr. Kane's frequent and unsuccessful filings constituted an abuse of the bankruptcy process. The hearing judge found that Mr. Kane's explanation at trial that "skeleton filings" are permitted in Bankruptcy Court and that he filed the petitions "late at night when he was exhausted" does not absolve him from his repeated "omissions and inaccuracies in his filings" because they are evidence of "a knowing disregard for the accuracy of the multiple petitions filed . . . under oath."

The hearing judge found that Mr. Kane disclosed to the bankruptcy judge that he intentionally does not include what he considers to be minor items when Mr. Kane stated

---

[11] After Bar Counsel filed the Petition for Disciplinary Action, Mr. Kane filed a sixth bankruptcy petition in November of 2018. Again, this Chapter 13 petition was deficient. The hearing judge took judicial notice of the Bankruptcy Court's January 10, 2019, order denying confirmation of the Respondent's Chapter 13 plan, with leave to amend.

that, "If I get somebody that sues me for a court reporter bill for $300 I don't list them on any financial reportings, and I do [sic] with any venue. They are just minor things."

Mr. Kane excepts to the hearing judge's finding that his frequent and unsuccessful filings were an abuse of the bankruptcy process. He claims that the filings are an attempt "to force a recalcitrant creditor to the negotiating table," which is a "common practice" and the different amounts in various schedules in the bankruptcy filings are explained by the fluid nature of a person's financial situation. We overrule this exception. Based upon our review of the record, the hearing judge's finding is not clearly erroneous. As set forth above, Mr. Kane filed multiple bankruptcy filings replete with incomplete and inconsistent information, and in each instance, the petition was dismissed. The hearing judge did not clearly err in finding that these multiple, serial incomplete filings constituted an abuse of the bankruptcy process.

2. Tax Returns

During the attorney grievance hearing, Mr. Kane testified that he deducted 100% of his communication expenses for his sole proprietorship on his 2014 and 2015 Individual Tax Returns, even though his wife and three children, who are not employees, also use these services. He also confirmed that he deducted amounts not related to the operation of his law practice, including the cost of his FIOS television. In his Findings, the hearing judge stated that, "[W]hile the Court acknowledges that the amount involved here is not great, that fact is not relevant to this Court's findings regarding the false statement."

Mr. Kane excepts to the hearing judge's findings of fact that information on his tax returns is false. Mr. Kane's exception to the hearing judge's finding of fact is overruled.

22

The hearing judge's finding is not clearly erroneous. Mr. Kane admitted that he deducts the full amount of the family cell phone expenses. Whether these deductions rise to the level a violation of Rule 8.4(b) or (c) is discussed *infra* when we address the hearing judge's conclusions of law.

### *Attorney Trust Account Overdraft*

In its Petition, Bar Counsel alleged a violation of Rule 8.1(b) regarding Mr. Kane's response to its investigation into a trust account overdraft matter after Bar Counsel received notice from Bank of America that Mr. Kane's trust account had been overdrawn by $4.42. While Mr. Kane did not respond to Bar Counsel's initial request, he eventually answered and indicated that the error was due to his having inaccurately recorded the amount of some checks on separate occasions. Mr. Kane further explained that he wrote a check to a client that was "an overpayment to the client of under $5.00. No other client funds in the account."

After Bar Counsel requested additional information because Mr. Kane had "only identified the name, date, amount, status, and 'value work done' for each of the identified transactions," Mr. Kane responded that he had "provided this information which is sufficient given the nature of these matters. You will need to outline why I need to provide anything further beyond this information[.] I do NOT have the time available to retrieve information on closed matters for a fishing expedition."

The hearing judge found that Bar Counsel did not set forth any proposed conclusions of law or articulate how Mr. Kane violated Rule 8.1(b) in his response to Bar Counsel. Consequently, the hearing judge treated that claim as abandoned by Bar Counsel. No

23

exceptions were filed by Bar Counsel to the hearing judge's findings or conclusion on this charge. Although Mr. Kane filed an exception, the hearing judge did not find a violation. Accordingly, we will not address it further.

*Representation of Charles Arvin*

Charles Arvin worked for Lockheed Martin ("Lockheed") for 34 years. In the spring of 2012, Lockheed notified employees it was shutting down its battery laboratory in Clarksburg, Maryland. Among those workers affected were Charles Arvin and Sharon Sanbower. Ms. Sanbower was a part-time chemical engineer who worked for Lockheed for 38 years. Mr. Arvin, a software engineer, earned an annual salary of approximately $87,000. Lockheed offered Mr. Arvin a severance package of approximately $50,000. The severance package included "several provisions regarding the release of all claims against Lockheed with the exception of 'any claims under applicable workers' compensation statutes.'" Mr. Arvin had to either reject or accept the severance offer within 45 days.

Mr. Arvin's last day of employment was June 27, 2012. During Mr. Arvin's last days of employment, he inhaled a harmful electrolyte solution while opening a battery cell. Mr. Arvin asserted that this exposure led to a persistent cough, permanent lung damage, and the worsening of a preexisting anxiety disorder.

At the urging of Mr. Arvin's co-worker, Sharon Sanbower[12] Mr. Arvin met with Mr. Kane at a Starbucks in July of 2012 to discuss whether he should accept the severance

---

[12] Mr. Arvin had known Ms. Sanbower for nearly 25 years and worked with her in the battery laboratory for approximately ten years. Ms. Sanbower was among the workers affected by the closing of the battery laboratory. Ms. Sanbower had retained Mr. Kane to represent her in a claim related to chemical exposure. Mr. Kane's representation of Ms.

24

package offered by Lockheed and the possibility of pursuing a toxic tort claim. Ms. Sanbower attended the meeting with Mr. Arvin.

Mr. Kane told Mr. Arvin that in order to pursue a toxic tort lawsuit against Lockheed, he would have to waive any severance offer. Mr. Kane advised Mr. Arvin that his recovery in a toxic tort lawsuit would exceed the amount of the severance offer made by Lockheed. Mr. Kane also told Mr. Arvin that "I hate to see you take that settlement package for the little bit of money you're going to receive." He further advised Mr. Arvin that "you have a better chance of making more money in this lawsuit than would making [sic] in your severance."

Mr. Kane had no legal or factual basis to support this advice. He had not conducted any legal research, nor had he reviewed any of Mr. Arvin's medical records, and he had not consulted with any experts concerning the potential toxic tort claim. Mr. Kane did not advise Mr. Arvin of the risks associated with pursuing a toxic tort claim, including the costs of litigation. Mr. Kane failed to advise Mr. Arvin that he could accept the severance offer and still pursue a worker's compensation claim. Mr. Kane confirmed no fewer than six times at this initial meeting that Mr. Arvin should waive the severance offer. The hearing judge found that in reliance on Mr. Kane's "uninformed advice," Mr. Arvin waived the severance offer and retained Mr. Kane to represent him in pursuing his claim against Lockheed.

_____

Sanbower is not a part of the charges that the Attorney Grievance Commission brought against Mr. Kane.

25

Mr. Kane excepts to the hearing judge's finding that he gave Mr. Arvin "uninformed advice" and contends that he "gave him the best advice that he could—based upon what he knew at the time—that a toxic tort claim would be worth more than the severance package." Mr. Kane further notes that Ms. Sanbower had already come to that conclusion independent of his advice. Mr. Kane's exception is overruled. There is clear and convincing evidence in the record that Mr. Kane had no basis in law or in fact for the "advice" that he gave Mr. Arvin at that time, nor was it reasonable or appropriate for Mr. Kane to put any weight in research undertaken by Ms. Sanbower, a layperson, as it related to her separate matter, when advising Mr. Arvin.

### 1. Worker's Compensation Claim

#### a. Occupational Disease

In July of 2012, Mr. Kane filed the first workers' compensation claim on behalf of Mr. Arvin, arguing that Mr. Arvin's electrolyte exposure resulted in an occupational disease. The claim described the accident as follows: "during closing the battery lab I was exposed to toxic chemicals. Causing anxiety and emotional distress with other problems."

At a hearing before the Maryland Workers' Compensation Commission ("WCC"), Mr. Kane argued a "'hybrid theory' of liability." Mr. Kane acknowledged that Mr. Arvin's claim "did not meet the exact criteria of an occupational disease and did not meet the exact criteria of an accidental injury," in part, because Mr. Arvin did not miss a single day of work. Mr. Arvin's claim was denied by the WCC in May of 2013. Mr. Kane filed a request for a rehearing, which was denied.

At the attorney grievance hearing, Mr. Kane and Mr. Arvin gave conflicting testimony regarding whether Mr. Kane had ever advised Mr. Arvin of his intent to present a "novel legal theory in an attempt to advance the law" or that there were any complications with his workers' compensation claim. The hearing judge stated that he was unable to determine by "clear and convincing evidence that Kane failed to advise Mr. Arvin of the novel hybrid theory." Bar Counsel did not file any exceptions to this finding. Accordingly, we shall not consider it further.

b. First Judicial Review Case

Mr. Kane filed a petition for judicial review of the WCC's decision in the Circuit Court for Frederick County in July of 2013.

Counsel for Lockheed Martin, Michael Daney, sent discovery requests to Mr. Kane in August of 2013. Mr. Kane emailed them to Mr. Arvin, advising him that the responses to the discovery requests were due within 30 days. Mr. Arvin replied to Mr. Kane's email advising him that he had "no clue what is a discovery request". Mr. Kane never responded to Mr. Arvin's email, and failed to take any action to complete the discovery responses for more than four months.

In September of 2013, the court entered a scheduling order. In January of 2014, Mr. Kane forwarded to Mr. Arvin his proposed responses to Lockheed's discovery request and asked him to review them as Mr. Kane wanted to file them "asap." Mr. Arvin responded by email and provided feedback on January 26, 2014. On January 28, Mr. Kane sent Mr. Arvin a final draft of the responses and also emailed Mr. Daney indicating he would have discovery responses "before the end of the day." However, Mr. Kane never followed

through on sending the final responses to Mr. Daney, which led to Lockheed filing a Motion for Sanctions, or in the Alternative, to Compel Discovery Responses. Mr. Kane failed to advise Mr. Arvin of the motion for sanctions. Mr. Kane finally provided signed discovery responses to Mr. Daney on February 10, 2014.

When Mr. Kane responded to the motion for sanctions, he blamed his delayed responses on Mr. Arvin's "economic and medical constraints" indicating that they were impediments to his ability to obtain discovery responses. Mr. Kane also stated that he was a sole-practitioner and had no staff, that his caseload had doubled, and that the complexity of Mr. Arvin's case had created additional challenges. The circuit court ultimately found the motion for sanctions to be moot.

Mr. Kane waited until five days before the discovery deadline to serve Lockheed with interrogatories. In response to Mr. Kane's untimely filing of discovery, Lockheed filed a Motion for Protective Order. The circuit court granted Lockheed's motion and ordered "that the discovery sought by the Claimant shall not be had." Mr. Kane failed to advise his client that he propounded late discovery or that the court had granted a protective order.

Mr. Kane failed to identify experts in accordance with the court's scheduling order. Instead, Mr. Kane attempted to identify three experts in his pretrial statement, which was filed six days late. Lockheed filed a series of motions to preclude the testimony of two witnesses and to preclude evidence related to an accidental injury. Mr. Kane failed to respond to any of the motions, which were later granted by the court. Mr. Kane failed to advise Mr. Arvin of the motions or the court's rulings. Mr. Kane voluntarily dismissed the case in June of 2014, claiming that the petition was "premature."

At the attorney grievance hearing, Mr. Kane argued that because Mr. Daney was aware of the experts from the WCC case, he was not bound to designate his experts in accordance with the scheduling order in the circuit court case. The hearing judge found "no merit" in Mr. Kane's argument.

### c.  Accidental Injury Claim

Mr. Kane filed a second workers' compensation claim on behalf of Mr. Arvin in April of 2014 in which he alleged an accidental injury. A hearing was held before the WCC, and in June of 2014, the claim was denied.

### d.  Second Judicial Review Case

Mr. Kane filed a petition for judicial review in the Circuit Court for Frederick County in September of 2014. In October, Lockheed, through Mr. Daney, served interrogatories and a request for production of documents on Mr. Kane. In early February 2015, a scheduling order was entered, which among other things, established a discovery deadline and a deadline for disclosing experts. In April of 2015—six months after discovery was propounded—Mr. Kane sent Mr. Arvin draft responses for his review. The hearing judge did not find any evidence that Mr. Kane ever provided Mr. Arvin's discovery responses to Lockheed.

Lockheed and Mr. Arvin participated in a mediation in June of 2015 in which Lockheed offered Mr. Arvin $10,000 to settle all of his claims. Mr. Kane advised Mr. Arvin to reject the settlement offer because the amount was less than Lockheed's original severance offer of $52,000. Notably, at the attorney grievance hearing, Mr. Arvin testified that during this mediation, he learned for the first time, and from the mediator, that

he had not been required to waive the initial severance offer in order to pursue a workers' compensation claim.

One day prior to the discovery deadline, Mr. Kane propounded discovery upon Lockheed. Soon thereafter, Lockheed's counsel filed a motion for a protective order. Mr. Kane filed an untimely opposition to the motion and also filed a motion to modify the scheduling order. The circuit court granted Lockheed's motion, and ordered "that the discovery sought by the Claimant shall not be had . . . ." The court denied Mr. Kane's motion to amend the scheduling order.

As before, Mr. Kane failed to file expert designations by the deadline established in the scheduling order. Once again, Mr. Kane attempted to identify four expert witnesses in an untimely pretrial statement.

Given Mr. Kane's failure to conduct discovery or identify experts in accordance with the court's scheduling order, Lockheed filed a series of motions to preclude Mr. Arvin from presenting witnesses or evidence at trial. Once again, Mr. Kane failed to respond to Lockheed's motions. The circuit court granted Lockheed's motions.

Lockheed filed a motion for summary judgment, based in part on Mr. Arvin's failure to identify an expert to "present a complicated medical question of causation." Mr. Kane filed an untimely response the day before the hearing on the motion. The circuit court granted Lockheed's motion for summary judgment.

Mr. Kane failed to inform Mr. Arvin of the existence of the motions or the fact that the court granted the motion for summary judgment. Mr. Kane filed a motion for reconsideration, which was denied.

Mr. Kane filed a Notice of Appeal to the Court of Special Appeals in November of 2015. The Court of Special Appeals affirmed the circuit court's decision in an unreported opinion, *Arvin v. Lockheed Martin Corp.*, No. 2170, 2017 WL 1034002 (Md. Ct. Spec. App. March 17, 2017).

### e. Novelty of Workers' Compensation Claim

The hearing judge found that because Mr. Arvin's workers' compensation claim had unusual facts that did not conform neatly under either a claim for occupational disease or a claim for an accidental injury, Mr. Kane's attempt to extend or modify the existing law with his hybrid theory was made in good faith. He further concluded that even though Mr. Kane's arguments failed, they were not unethical. No exceptions were filed with regard to this finding and we shall not consider it further.

### 2. Toxic Tort Claim

As noted *supra*, at the conclusion of their initial meeting in July of 2012, Mr. Arvin retained Mr. Kane to pursue a toxic tort claim against Lockheed. The hearing judge determined that the statute of limitations relating to this potential claim ran on or before July 2015.

The hearing judge found that Mr. Kane "failed to take any meaningful steps to advance Mr. Arvin's interests related to a toxic tort claim against Lockheed." Mr. Kane excepts to the hearing judge's factual finding that he "did not do any work on the toxic tort complaint." We overrule Mr. Kane's exception. Based upon the facts described above, the hearing judge's finding is supported by clear and convincing evidence.

31

The record reveals that Mr. Kane first communicated with Mr. Arvin about the toxic tort claim in an email sent on September 9, 2013—over a year after their initial meeting. In the email, Mr. Kane stated, "Nothing new and not [sic] trial date set. Working on the toxic tort complaint which is separate from the workers comp case." The hearing judge found that "[t]here is no credible evidence that [Mr. Kane] [] did any work on the 'toxic tort complaint' related to Mr. Arvin's claim as opposed to Ms. Sanbower's claim." It is undisputed that a complaint was never filed.

The second and only other communication in the record from Mr. Kane relating to Mr. Arvin's toxic tort claim was an email from Mr. Kane to Mr. Arvin dated April 25, 2014, in which Mr. Kane stated:

> Exchanged several emails to with Daney (counsel for LMC). They are eager to receive our settlement demand. Would like to get this to Daney by the weekend (before Monday). Will prepare a recommended settlement demand for your review sometime before Sunday hopefully. They want resolution of both workers compensation claims and any other possible claims (toxic tort exposure).

There is no evidence that Mr. Kane ever communicated with Lockheed regarding Mr. Arvin's potential toxic tort claim.

At the attorney grievance hearing, Mr. Kane testified that he determined in April of 2015 that he could not pursue a toxic tort claim on Mr. Arvin's behalf. Notwithstanding his position, Mr. Kane failed to advise Mr. Arvin that he had determined the toxic tort claim could not be pursued, nor did he provide Mr. Arvin with any explanation about his reasoning. Mr. Kane failed to present any credible evidence that he undertook any research or expended any time evaluating Mr. Arvin's potential toxic tort claim. Notably, Mr. Kane

32

failed to advise Mr. Arvin of the relevant statute of limitations for his tort claim in advance of the expiration of the deadline and that he would not be filing a complaint.

### 3. Bar Counsel's Investigation into Arvin Complaint

Mr. Arvin filed a complaint with the Attorney Grievance Commission against Mr. Kane in May of 2017. Mr. Kane failed to respond to Bar Counsel's first correspondence in which they sent him a copy of the complaint and requested that Mr. Kane respond within fifteen days. After Bar Counsel sent another letter on July 25 by regular mail and email, Mr. Kane responded and indicated he had been "out of the country" and "out of town . . . at a workers' compensation conference. I am digging out obviously." While Mr. Kane did not specifically ask for an extension of time to respond, the hearing judge determined that such a request was implied from his email. Mr. Kane again corresponded with Bar Counsel on August 7, indicating he was close to completing his responses relating to both the Lonergan and Arvin matters, but he had been traveling and was at that time out of town visiting elderly in-laws.

Having received no substantive response, on August 8, Bar Counsel requested that Mr. Kane provide written responses within ten days. Mr. Kane responded to Bar Counsel's request by stating that the investigation was "a ridiculous joke of a process." Eight days later, he provided Bar Counsel with a partial substantive response. Approximately a month later when Bar Counsel asked Mr. Kane to provide "a copy of the complete client file, including but not limited to your retainer agreements, all correspondence, billing invoices and timekeeping records" as well as "all financial records relevant to Mr. Arvin maintained pursuant to Maryland Rule 19-407(d)[,]" Mr. Kane did not respond.

Mr. Kane excepts to the hearing judge's findings in connection Bar Counsel's investigation into Mr. Arvin's complaint, arguing that "the record supports a finding that the [R]espondent's family issues (serious illness of his in-laws) delayed his response to Bar Counsel's inquiries and that the [R]espondent ultimately appropriately engaged with Bar Counsel." We overrule Mr. Kane's exception. The hearing judge's findings with respect to Bar Counsel's investigation are not clearly erroneous.

## II. Standard of Review

As noted above, in an attorney discipline matter, this Court reviews for clear error a hearing judge's findings of fact, giving due regard to the hearing judge's opportunity to assess the credibility of the witnesses. Md. Rule 19-741(b)(2)(B). *See also Attorney Grievance Comm'n v. Dyer*, 453 Md. 585, 643, *cert. denied*, 138 S. Ct. 508 (2017). We review a hearing judge's conclusions of law *de novo* without deference. Md. Rule 19-741(b)(1). This Court determines whether clear and convincing evidence establishes that a lawyer violated the MLRPC. *See Attorney Grievance Comm'n v. Ucheomumu*, 462 Md. 280, 299 (2018); *see also* Md. Rule 19-727(c) ("Bar Counsel has the burden of proving averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

## III. Hearing Judge's Conclusions of Law

From the findings of fact presented above, the hearing judge found by clear and convincing evidence that Mr. Kane violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.7, 1.16, 3.1, 3.3, 3.4, 8.1, and 8.4.[13]

---

[13] Following trial, Bar Counsel withdrew the allegation that Mr. Kane violated Rule 1.15(e).

### *Rules 1.1 (Competence) and 1.3 (Diligence)*

Rule 1.1 requires that an attorney "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.3 requires that a lawyer must also "act with reasonable diligence and promptness in representing a client." Conduct which violates Rule 1.1 will also often violate Rule 1.3. *See Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 398 (2008) (finding violations of Rules 1.1 and 1.3 where counsel "took a fee and then abandoned the litigation"). The hearing judge found that Mr. Kane violated Rules 1.1 and 1.3 in his representation of Mr. Arvin and the Lonergans. We uphold these conclusions.

### *Arvin Representation*

With respect to Mr. Arvin, the hearing judge determined that Mr. Kane's advice to Mr. Arvin regarding his severance agreement violated Rule 1.1 because he lacked the requisite knowledge, thoroughness, and preparedness to advise Mr. Arvin with respect to his severance and a potential toxic tort claim against Lockheed. Specifically, the hearing judge found that at the time that Mr. Kane advised Mr. Arvin to reject the settlement offer, he had not reviewed Mr. Arvin's medical records, nor had he conducted any research regarding the viability of Mr. Arvin's claim or its potential value. Mr. Kane had not consulted with any experts or considered the time and expense of tort litigation. At trial, Mr. Kane admitted that he relied, at least in part, on Ms. Sanbower, a lay person, in determining whether she and Mr. Arvin had a strong claim. The hearing judge found that Mr. Kane had no reasonable basis to advise Mr. Arvin that he would recover significantly

more money if he pursued a toxic tort lawsuit than if he accepted Lockheed's severance package. Mr. Kane later abandoned the toxic tort claim because he could not establish the basis for the cause of action.

"Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 222 (2012) (quoting *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 54 (2006)). "An attorney may violate [Rule] 1.1, although he or she has the adequate knowledge or skill to represent a client, if the attorney fails to apply the thoroughness and/or preparation necessary for proper representation." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 179 (2015) (citing *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 553 (2011) (citations omitted)).

The hearing judge also found that Mr. Kane violated Rule 1.1 and 1.3 by failing to undertake any meaningful investigation into Mr. Arvin's toxic tort claim, and by failing to advise Mr. Arvin that he would not be filing a complaint on his behalf prior to the expiration of the statute of limitations. The hearing judge found that Mr. Kane violated Rules 1.1 and 1.3 in connection with the petitions for judicial review of the decisions of the WCC, by repeatedly failing to respond to discovery, and by failing to designate experts in a timely fashion, which resulted in the exclusion of witnesses at trial and the entry of summary judgment against his client.

Mr. Kane excepts to the hearing judge's findings that he violated Rule 1.1 and 1.3 in connection with his representation of Mr. Arvin on the toxic tort claim. Specifically, he contends that at his initial meeting with Mr. Arvin and Ms. Sanbower, he made it clear that

Mr. Arvin had a choice—to accept the severance package and waive the claim for a toxic tort or to reject the severance (as Ms. Sanbower had done based upon her own independent research) and pursue the toxic tort. Mr. Kane asserts that he made it clear that the decision was Mr. Arvin's choice, and that Mr. Kane made no guarantees of success.

We overrule Mr. Kane's exception. Mr. Kane's exception is contradicted by his own testimony. At trial, Mr. Kane admitted that when he told Mr. Arvin that his toxic tort claim was worth more than his severance package, he had not conducted any research, had not reviewed Mr. Arvin's medical records, and had not spoken with any experts regarding Mr. Arvin's potential claim. As such, the hearing judge correctly found that Mr. Kane's advice was "uninformed" and "had no legal or factual basis." Clear and convincing evidence supports the hearing judge's conclusion that Mr. Kane violated Rule 1.1. *See Attorney Grievance Comm'n v. Zhang*, 440 Md. 128, 158 (2014) (attorney violated MLRPC 1.1 when she failed to conduct any legal research or to speak with her client before suggesting grounds for annulment).

Mr. Kane excepts to the hearing judge's conclusion that he violated Rule 1.3 because he contends that "there is no evidence that the delays in discovery in the circuit court caused the failure of the workers' compensation claim. Those claims failed on their merits—not because of discovery issues." We overrule Mr. Kane's exception. First, whether Mr. Kane's misconduct caused the failures in Mr. Arvin's case is not dispositive when determining whether an attorney has violated the rules of professional conduct. *See Attorney Grievance Comm'n v. Singh*, ____ Md. _____, Misc. Docket AG No. 6, Sept. Term, 2018, 2019 WL 3210320, *9 (Md. July 17, 2019) (noting that the phrase "no harm,

37

no foul" notion of harmless error in the sports context does not apply to the rules of professional conduct governing attorneys). Second, even if the "no harm, no foul" approach applied in this context, there is insufficient evidence in the record to support Mr. Kane's claim that Mr. Arvin's case failed on its merits—summary judgment was granted against Mr. Arvin because of Mr. Kane's failure to respond to discovery and failure to identify experts in accordance with the court's scheduling order. There is no evidence in the record upon which we could assess the strength of Mr. Arvin's case.

*Lonergan Representation*

The hearing judge concluded that Mr. Kane violated Rule 1.1 and 1.3 when he failed to act with diligence and promptness in his representation of the Lonergans. Mr. Kane failed to act diligently when he failed to disclose any conflict of interest to the Lonergans arising out of the fact that he was a named defendant and failed to communicate with Mrs. Lonergan concerning the fact that she was a named defendant in the Adversary Proceeding. Specifically, the hearing judge concluded that Mr. Kane violated Rule 1.1 when he delayed in preparing discovery responses, which ultimately resulted in sanctions being entered against the Lonergans. Clear and convincing evidence supports this conclusion, as it is undisputed that the Bankruptcy Court entered a monetary order of sanctions against the Lonergans, which they paid, arising from Mr. Kane's failure to timely respond to discovery.[14]

---

[14] Although Mr. Kane filed an exception to the hearing judge's conclusions of law that he violated Rule 1.1 (Competence), 1.2 (Scope of Representation), and 1.3 (Diligence) in connection with his representation of the Lonergans, he admits that his conduct violated the Rules, stating that in the case of monetary sanctions, he "accepts responsibility and

The hearing judge also concluded that Mr. Kane violated Rule 1.1 when he failed to identify the conflict of interest between himself, Mr. Lonergan, Mrs. Lonergan, and Matrix in the Adversary Proceeding. Clear and convincing evidence supports this conclusion. *See Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 646 (2016) (concluding the attorney violated Rule 1.1 where she failed to recognize a conflict of interest).

### Rule 1.2 (Scope of Representation and Allocation of Authority Between Client and Attorney)

Rule 1.2 provides in pertinent part that:

> . . . an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation . . . .

We have held repeatedly that "[w]hen a lawyer fails to take any steps towards the client's objective, the lawyer necessarily fails to abide by the client's decision concerning that objective." *Attorney Grievance Comm'n v. Gage-Cohen*, 440 Md. 191, 198 (2014) (internal quotations omitted) (quoting *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 223 (2012)). Additionally, an attorney violates Rule 1.2 when "he or she fails to inform a client of the status of his or her case, thereby denying the client the ability to make informed decisions." *Hamilton*, 444 Md. at 182.

---

agrees that his failure to provide prompt discovery supports a violation of [these Rules] []." Mr. Kane also admits that he should have recognized the potential conflict of interest arising from his dual role as attorney and a named defendant in an Adversary Proceeding with his clients. Because Mr. Kane admits that his conduct in connection with his representation of the Lonergans violated these Rules, we overrule his exceptions.

*Arvin Representation*

With respect to Mr. Arvin, the hearing judge found that Mr. Kane violated Rule 1.2 in his representation by failing to take any meaningful steps toward investigating or pursuing a toxic tort claim on Mr. Arvin's behalf or advising Mr. Arvin regarding the toxic tort claim.[15] The hearing judge also determined that Mr. Kane failed to communicate his conclusion not to pursue the toxic tort claim or advise Mr. Arvin when the statute of limitations would run. As such, the hearing judge determined that Mr. Arvin was denied the ability to make informed decisions regarding the representation. Clear and convincing evidence supports the hearing judge's conclusions.

*Lonergan Representation*

In finding a violation of Rule 1.2, the hearing judge determined that the Lonergans were denied the ability to make informed decisions regarding Mr. Kane's representation because Mr. Kane failed to identify the conflict of interest and withdraw as counsel in the Adversary Proceeding. The hearing judge concluded that Mr. Kane violated Rule 1.2 when he represented Mrs. Lonergan in the Adversary Proceeding without ever communicating with her about that matter.[16] Mr. Kane could not possibly know Mrs. Lonergan's objectives

---

[15] Mr. Kane excepts to the hearing judge's conclusion of law that he violated Rule 1.2, arguing that he put "both Mr. Arvin and Ms. Sanbower in touch with potential experts." The hearing judge found that "there is no credible evidence that [Mr. Kane] [] did any work on the 'toxic tort complaint' related to Mr. Arvin's claim as opposed to Ms. Sanbower's claim." The hearing judge's conclusion that Mr. Kane failed to take meaningful steps toward investigating and pursuing Mr. Arvin's toxic tort claim is supported by clear and convincing evidence, and we overrule Mr. Kane's exception.

[16] Again, while Mr. Kane notes an "exception" to the judge's conclusion of law, he "candidly admits that he could have handled the Lonergan representation in a better fashion"

because she was unaware that she was a named party in the Adversary Proceeding, and Mr. Kane never discussed the Adversary Proceeding (including without limitation the entry of a sanctions order) with her. *See Attorney Grievance Comm'n v. Smith*, 457 Md. 159, 215 (2018) ("In order for a lawyer to abide by a client's decisions concerning the objectives of the representation, the client must be able to make informed decisions as to the objectives of the representation." (quoting *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 380 (2015))). Clear and convincing evidence supports the conclusion that Mr. Kane violated Rule 1.2 in his representation of the Lonergans.

### *Rule 1.4 (Communication)*

Rule 1.4 (Communication) provides, in pertinent in part:

(a) A lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and
> (4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

---

and that "he should have communicated directly with Mrs. Lonergan and not have relied solely on Mr. Lonergan to inform his wife of the status of the case." Given Mr. Kane's admissions and based upon our review of the record, Mr. Kane's exception is overruled.

41

We have held that an attorney violates Rule 1.4 "when the attorney fails to communicate crucial information about the status of the case [to the client]." *Hamilton*, 444 Md. at 185 (citing *De La Paz*, 418 Md. at 554).

*Arvin Representation*

With respect to Mr. Arvin, the hearing judge concluded that Mr. Arvin was unaware that he could have pursued the workers' compensation claim while also taking advantage of Lockheed's severance offer. Mr. Arvin stated that he first learned of this fact at the mediation of the workers' compensation case, well after he rejected the severance.

Moreover, Mr. Kane failed to advise Mr. Arvin that he was not going to pursue the toxic tort claim or when the statute of limitations would run on such a claim. Rather, Mr. Kane simply abandoned the toxic tort claim without advising Mr. Arvin. The hearing judge's conclusion that Mr. Kane's communication, or lack thereof, between himself and Mr. Arvin demonstrates a violation of Rule 1.4(a) and (b) is supported by clear and convincing evidence.

Mr. Kane has filed an exception to the judge's conclusion that Mr. Kane violated Rule 1.4 in the course of his representation of Mr. Arvin. The basis for his exception is that there "was no lack of communication with Mr. Arvin about the toxic tort litigation." Based upon our independent review of the record, we overrule this exception. There is clear and convincing evidence in the record that Mr. Kane violated Rule 1.4(a) and (b) in connection with his lack of communication with Mr. Arvin about the toxic tort matter.

42

*Lonergan Representation*[17]

With respect to Mr. Lonergan, the hearing judge found that Mr. Kane violated Rule 1.4(a)(2) and 1.4(b) when he failed to timely provide the client with information about the fees and expenses that had allegedly been incurred during the first three years of the litigation. The hearing judge also found that Mr. Kane failed to adequately communicate with Mr. Lonergan regarding the issuance of sanctions against him and his wife. These findings are supported by clear and convincing evidence.

As for Mrs. Lonergan, the hearing judge found that Mr. Kane violated Rule 1.4(a)(1)–(4) and 1.4(b) when he failed to communicate directly with Mrs. Lonergan after the Adversary Proceeding was filed. We agree. At that point, both Lonergans were named defendants in the action. Mr. Kane's continued reliance upon Mr. Lonergan to communicate with Mrs. Lonergan violated Rule 1.4. He filed pleadings and motions and appeared in court on Mrs. Lonergan's behalf without ever speaking with her about the adversary complaint. Mr. Kane never confirmed that he was authorized to represent Mrs. Lonergan and act on her behalf. Moreover, Mr. Kane's awareness of the discord that this litigation was causing between the Lonergans, only heightened the need to communicate directly with both parties and confirm Mrs. Lonergan's position.

---

[17] Mr. Kane once again notes an exception to the hearing judge's conclusion of law that he violated Rule 1.4 in his representation of the Lonergans. While he styles his pleading caption as an exception, no specific exception is pleaded. He admits that he could have communicated better with the Lonergans and "accepts responsibility for this lapse in representation." To the extent that Mr. Kane's pleading contains an exception to the legal conclusion of a violation of Rule 1.4 in connection with the Lonergans, it is overruled.

### *Rule 1.7 (Conflict of Interest)*

A conflict of interest generally disqualifies a lawyer from representing a particular client.

> Rule 1.7 specifically states that a conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or *by a personal interest of the lawyer.*"

*Attorney Grievance Comm'n v. Powell*, 461 Md. 189, 219 (2018) (emphasis original).

The hearing judge concluded that Mr. Kane violated MLRPC 1.7 in his representation of the Lonergans. It is undisputed that Mr. Kane was a named defendant along with Mr. Lonergan, Mrs. Lonergan, and Matrix in the Adversary Proceeding filed by the Trustee. When Mr. Kane was joined as a defendant with the Lonergans, a conflict of interest arose between Mr. Kane and his clients. The hearing judge found that Mr. Kane would have the very real incentive to lessen his liability, which in turn could increase the Lonergans' obligation. Indeed, the very tension between Mr. Kane and his clients is evident from his explanation to the Bankruptcy Court when he was trying to explain his failure to list the Adversary Proceeding in his personal bankruptcy. Mr. Kane stated: "I believed and still do believe that the only financial exposure, if there is any in this case, is it relates to my former clients, not to me." Mr. Kane simply ignored the significant risk that his representation of the Lonergans would be materially limited by his personal interest when he was named as a co-defendant with his clients in the Adversary Proceeding involving conduct in which he was directly involved and that he had recommended.

The hearing judge also concluded that a potential conflict arose between Mr. and Mrs. Lonergan in the Adversary Proceeding. The hearing judge found that Mrs. Lonergan was a passive party to the transaction and could have cast blame and responsibility on Mr. Lonergan (as well as Mr. Kane). Moreover, Mr. Kane was aware of the discord between the Lonergans over the business. Instead of explaining the potential conflict, or even advising Mrs. Lonergan that she had been sued, he continued to communicate solely with Mr. Lonergan.

Lastly, there is no evidence in the record that the Lonergans gave their informed consent to any of the conflicts of interest in writing or otherwise. *See Powell*, 461 Md. at 219.

The hearing judge's conclusion that Mr. Kane violated Rule 1.7 in his representation of the Lonergans is supported by clear and convincing evidence.[18]

### *Rule 1.16 (Declining or Terminating Representation)*

Rule 1.16 provides in pertinent part, that:

(a) . . . a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:[] the representation will result in violation of the Maryland Lawyer's Rules of Professional Conduct or other law;

\* \* \*

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as

---

[18] Yet again, in Mr. Kane's written exceptions, he notes an exception to the hearing judge's conclusion of law finding a violation of Rule 1.7 but states no basis for the exception and "candidly admits that he made a mistake" and that "[h]e should have rectified the problem earlier." To the extent that Mr. Kane's pleading contains an exception to the finding of a Rule 1.7 violation, it is overruled.

giving reasonably notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred . . . .

*Arvin Representation*

The hearing judge's conclusion that Mr. Kane violated Rule 1.16 in his representation of Mr. Arvin is supported by clear and convincing evidence. As noted *supra*, Mr. Kane failed to take any meaningful steps towards pursuing a toxic tort claim against Lockheed on Mr. Arvin's behalf and failed to advise him that no action would be taken. We have held that an attorney violates Rule 1.16(d) "[w]here a lawyer abandons a client without notice through the failure to take meaningful steps in pursuit of the client's interest . . . ." *Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 255 (2013) (citing *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 225 (2012) (internal quotations omitted)).

We agree with the hearing judge's conclusion that Mr. Kane abandoned Mr. Arvin, without notice, as it relates to the toxic tort claim.[19] Once Mr. Kane determined that he

___

[19] In Mr. Kane's exception to the hearing judge's conclusion that he violated Rule 1.16 in his representation of Mr. Arvin, Mr. Kane states that he "did not abandon Mr. Arvin—he litigated the workers' compensation claim twice in the Circuit Court and appealed the matter to the Court of Special Appeals." We overrule Mr. Kane's exception. Mr. Kane's "representation" of Mr. Arvin in the circuit court consisted of Mr. Kane voluntarily dismissing one matter, and in the other matter, having summary judgment entered against his client because of Mr. Kane's discovery violations and his failure to designate experts. Putting aside Mr. Kane's wholly inadequate representation of Mr. Arvin in the workers' compensation cases, the hearing judge based his legal conclusion of a Rule 1.16 violation on the fact that Mr. Kane did not take any meaningful steps to pursue the toxic tort claim and failed to advise Mr. Arvin that he would not be filing such a claim in advance of the expiration of the statute of limitations. Based upon our independent review

46

would not pursue a toxic tort claim on Mr. Arvin's behalf, he was obligated to take steps to the extent reasonably practicable to protect Mr. Arvin's interests. Mr. Kane failed to advise Mr. Arvin that he would not be filing a toxic tort claim on his behalf until after the expiration of the applicable statute of limitations.

### *Lonergan Representation*

The hearing judge's conclusion that Mr. Kane violated Rule 1.16 when he represented the Lonergans in the Adversary Proceeding in violation of Rule 1.7, as described, *supra*, is also supported by clear and convincing evidence.

### *Rule 3.1 (Meritorious Claims and Contentions)*

Rule 3.1 provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case can be established.

The hearing judge found that Mr. Kane violated Rule 3.1 in connection with his personal bankruptcy filings. Specifically, the hearing judge found that Mr. Kane's serial bankruptcy filings were designed to delay a foreclosure or frustrate the lender because Mr. Kane could not obtain the loan modification that he desired. The hearing judge found that each bankruptcy filing was dismissed for failure to prosecute, failure to confirm a plan or failure to cure deficiencies in the documents submitted. The hearing judge noted that the

---

of the record, there is clear and convincing evidence to support the hearing judge's finding in that regard.

evidence submitted, and Mr. Kane's own testimony demonstrated that his bankruptcy filings were strategic and not intended to result in a successful Chapter 13 plan. Mr. Kane testified that there was an intent to confirm a plan; however, something always came up. The hearing judge found that Mr. Kane's own filings contradicted his testimony. The hearing judge concluded that the filings were not made in good faith as they were designed to frustrate and delay the Respondent's creditors, primarily his mortgagee.

Mr. Kane filed an exception to this conclusion and contends that there is no legal basis for the conclusion that his repeated filings were an abuse of the bankruptcy process. He contends that the filings "were a legitimate effort to force a recalcitrant creditor to the negotiating table."

The record clearly demonstrates that Mr. Kane has serially filed six bankruptcy petitions on the eve of foreclosure, all of which were dismissed by the Bankruptcy Court for failure to prosecute or failure to complete the required filings. The hearing judge, who had the opportunity to assess the credibility of the witnesses, rejected Mr. Kane's testimony that he had a legitimate basis for filing each of his bankruptcy petitions. The hearing judge's conclusion that Mr. Kane's serial bankruptcy filings violate Rule 3.1 is supported by clear and convincing evidence, and we overrule Mr. Kane's exception.

### Rule 3.3 (Candor to the Tribunal)

In pertinent part, Rule 3.3(a) provides that: "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

*Mr. Kane's Personal Bankruptcy Petitions*

The hearing judge concluded that Mr. Kane violated Rule 3.3(a)(1) as it relates to his personal bankruptcy petitions. Specifically, the hearing judge found that Mr. Kane made a false statement to the Bankruptcy Court when he failed to disclose the Adversary Proceeding. The hearing judge noted that Mr. Kane acknowledged the intentional nature of this omission when he advised the bankruptcy judge in the Adversary Proceeding that he failed to list the Trustee's claim in his personal bankruptcy petition for "privacy reasons" because he was trying to keep "all professional matters" out of his personal bankruptcy.

Mr. Kane excepts to this conclusion claiming that he "believed—albeit incorrectly—that the [Bankruptcy] [] Trustee was making an inchoate claim that did not have to be disclosed." Mr. Kane further contends that he "failed to disclose not for nefarious financing reasons but rather not to interfere with his clients' case." Mr. Kane's exceptions are overruled. The hearing judge's finding that Mr. Kane intentionally failed to disclose the Adversary Proceeding in which he had been named as a defendant is supported by clear and convincing evidence.[20]

---

[20] As part of its Petition for Disciplinary or Remedial Action and at the attorney grievance hearing, Bar Counsel also requested a finding that Mr. Kane violated Rule 3.3 regarding his statement to the Bankruptcy Court that he was representing the parties in the Lonergan matter on a *pro bono* basis. In failing to make this requested finding, the hearing judge described in detail the discussions between Mr. Lonergan and Mr. Kane concerning the agreed upon flat fee arrangement for the legal services involved in the PNC/Matrix litigation, as well as payments made by Mr. Lonergan and his father for the services provided up until the bankruptcy. The hearing judge commented that in Mr. Kane's mind, the flat fee arrangement "would fail to fully compensate him for the MBS work performed prior to the bankruptcy filing. Thus, he would not receive any compensation for the bankruptcy representation. Consequently, the Court cannot find by clear and convincing evidence that the statement, when made by Mr. Kane, was intentionally false." Bar

## Rule 3.4 (Fairness to Opposing Party and Counsel)

Rule 3.4 provides, in part:

A lawyer shall not:

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

### Arvin Representation

The hearing judge concluded that Mr. Kane violated Rule 3.4(c) and (d) in his representation of Mr. Arvin. Specifically, the hearing judge found that Mr. Kane failed to timely respond to Lockheed's discovery requests in both circuit court proceedings in violation of the Maryland Rules and the circuit court's scheduling orders. The hearing judge determined that Mr. Kane was aware of the deadlines imposed by the Rules and the scheduling order and nevertheless disobeyed said deadlines without justification in violation of Rule 3.4(c). *See Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 472 (2015) (overruling an exception to a finding of knowing and intentional disobedience of court orders).

The hearing judge also found that that Mr. Kane violated Rule 3.4(d) when he propounded untimely discovery requests on Lockheed (one day before the discovery deadline) in the second circuit court matter. In his conclusion of law, the hearing judge noted that Mr. Kane had testified that he "really didn't need that discovery effectively

---

Counsel did not file an exception to the hearing judge's finding. In accordance with Rule 19-741(b)(2), since no exceptions were filed, we will treat the hearing judge's findings of fact on this point as established.

because I knew what the case was all about." Despite this contention, Mr. Kane opted to propound discovery, one day before the discovery deadline in the second circuit court case, notwithstanding the fact that the same circuit court in the first workers' compensation appeal had issued a protective order from Mr. Kane's late filed discovery requests in that case. The hearing judge held that the only conclusion he could draw from Mr. Kane's identical behavior in the second request was that the untimely discovery was intended to annoy and/or burden the opposing party.

In his exceptions, Mr. Kane asks this Court to overturn the hearing judge's conclusion using the same excuse that he made during the attorney grievance hearing—that he did not really need the discovery, that the discovery was not propounded to harass the opposing side, and that it was propounded to "simply put the company on record in the litigation."[21] We agree with the hearing judge's conclusion that Mr. Kane violated Rule 3.4(d) with his untimely discovery requests and overrule Mr. Kane's exceptions. Regardless of Mr. Kane's statement that he did not "intend to harass" opposing counsel, the act of serving discovery one day prior to the discovery deadline on opposing counsel, not once, but in two separate cases, has the effect of harassing the opposing party. Mr. Kane's actions necessitated Lockheed's motion for a protective order—a filing that would have been unnecessary had Mr. Kane complied with the court's scheduling order.

---

[21] Mr. Kane's excuse that he served untimely discovery simply to put Lockheed "on record" in the litigation is nonsensical. Mr. Kane had been litigating this matter with Lockheed in not one, but two successive workers' compensation cases. By the time Mr. Kane propounded his second untimely discovery requests, Lockheed was most certainly "on record" of the cases that Mr. Kane had filed on his client's behalf.

*Lonergan Representation*

The hearing judge also found that Mr. Kane violated Rule 3.4(d) in connection with his representation of the Lonergans. As discussed *supra*, Mr. Kane's failure to provide timely discovery responses to the Trustee resulted in a monetary sanctions award against the Lonergans. The hearing judge commented that the record in this matter contains several instances of Mr. Kane's disregard for the Rules or the scheduling orders governing discovery in civil matters. We agree with the hearing judge and find clear and convincing evidence that Mr. Kane violated Rule 3.4(d).[22]

### *Rule 8.1 (Bar Admission and Disciplinary Matters)*

In pertinent part, Rule 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]" The hearing judge concluded that Mr. Kane violated Rule 8.1(b) as it related to Bar Counsel's investigation into the both the Arvin complaint and the Lonergan complaint.[23] Mr. Kane excepts to this conclusion, contending

---

[22] Once again, Mr. Kane notes an exception to the hearing judge's conclusion that he violated Rule 3.4 in connection with his representation of the Lonergans, but fails to provide any support for the exceptions, and "agrees that he was not as prompt as he should have been in responding to discovery in the Lonergan adversarial matter and that sanctions were imposed as a result." To the extent that Mr. Kane's written pleading alleges an exception to this particular conclusion of law, it is overruled.

[23] In the Lonergan matter, Bar Counsel asserted that Mr. Kane violated Rule 8.1(a) when he submitted his October 19, 2016, response to Bar Counsel, wherein he stated that he was representing MBS on a *pro bono* basis. As discussed *supra*, the hearing judge did not find that Mr. Kane's representation was an intentionally and knowingly false statement, and therefore did not find that such a representation to Bar Counsel violated Rule 8.1(a). Bar Counsel did not file an exception to this finding.

that "[R]espondent's family issues (serious illness of his in-laws) delayed his response to Bar Counsel's inquiries and the [R]espondent ultimately appropriately engaged with Bar Counsel." There is clear and convincing evidence in the record that Mr. Kane violated Rule 8.1(b) in connection with both investigations.[24] We overrule Mr. Kane's exception. There is clear and convincing evidence in the record that Mr. Kane failed to timely and completely respond to Bar Counsel's requests for information in both investigations. As noted *supra*, Mr. Kane had many excuses for failing to timely respond to Bar Counsel's requests, including that he had been traveling in Ireland and that he had a packed calendar. Moreover, Mr. Kane told Bar Counsel that Counsel's investigation was "a ridiculous joke of a process"—which is hardly an appropriate response.

### Rule 8.4 (Misconduct)

Rule 8.4(a) states that it is professional misconduct for an attorney to "violate . . . the Maryland Lawyers' Rules of Professional Conduct." The hearing judge found that because Mr. Kane has violated multiple Rules, there is clear and convincing evidence that his conduct has violated Rule 8.4(a). Since we have concluded that Mr. Kane violated multiple Rules, we agree that he has violated Rule 8.4(a).

---

[24] Bar Counsel also requested that the hearing judge find that Mr. Kane did not timely respond to its July 7, 2017, and July 25, 2017, correspondence in violation of 8.1(b). The hearing judge did not find a violation of Rule 8.1(b) arising out of Mr. Kane's failure to respond to these communications, instead finding that Mr. Kane's emails dated July 25, 2017, and August 7, 2017, in which he explains why he has not yet responded, could be construed as a request for a reasonable extension of time. Bar Counsel did not file an exception to this finding of fact, and we shall not consider it further.

53

Rule 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]" The hearing judge made the following conclusion with respect to Mr. Kane's personal bankruptcy and tax filing:

> The Respondent violated Rule 8.4(b) related to his personal bankruptcy and tax filings. 18 U.S.C. § 1001 makes it a crime to falsify or conceal a material fact, or to make a false statement or provide a false document to the government or a government agent. *Brogan v. United States*, 522 U.S. 398 (1998). 18 U.S.C. § 1621 prohibits perjury. *Bronston v. United States*, 409 U.S. 352 (1973).
>
> The Court concludes that the Respondent's conduct violated these criminal statutes when he knowingly and intentionally failed to disclose the adversary proceeding and list the Trustee as an unsecured creditor in his 2015 bankruptcy filing and submitted multiple bankruptcy petitions, signed under the penalties of perjury, that contained false information or intentionally concealed material facts. *Attorney Grievance Comm'n v. Fraidin*, 438 Md. 172 (2014) (attorney violated 8.4(b) when he aided his wife in preparing and filing forms and schedules that contained misrepresentations in the United States Bankruptcy Court).
>
> The Court also concludes that the Respondent violated 26 U.S.C. § 7206 which prohibits the filing of false tax returns when he filed a return which he knew contained deductions for expenses unrelated to his law practice. The fact that the amount of underpayment of tax may be low is immaterial. "The purpose of § 7206(1) is not simply to ensure that the taxpayer pay the proper amount of taxes—though that is surely one of its goals. Rather, that section is intended to ensure also that the taxpayer not make misstatements that could hinder the Internal Revenue Service ("IRS") in carrying out such functions as the verification of the accuracy of that return or a related tax return." *United States v. Greenberg*, 735 F.2d 29, 31 (2d Cir. 1984) (Finding a criminal violation where the underpayment of taxes amounted to $48.00). The Court concludes, therefore, that the Respondent violated Rule 8.4(b).

(cleaned up). Typically, when this Court finds a violation of Rule 8.4(b), the respondent has been charged or convicted of a crime in a separate proceeding. In this case, Mr. Kane has not been charged or convicted of a crime. Rather, the hearing judge concluded that

54

Mr. Kane violated criminal statutes in connection with his personal bankruptcy filings when he failed to disclose the Adversary Proceeding or identify the Trustee as an unsecured creditor and when Mr. Kane submitted multiple bankruptcy petitions that contained false and inconsistent information. The hearing judge further concluded that Mr. Kane violated 26 U.S.C. § 7206, which prohibits the filing of false tax returns, when he filed tax returns which included deductions for cell phone and internet expenses, including family use, and were unrelated to his law practice.

Mr. Kane has filed exceptions to the hearing judge's conclusion of law that he violated Rule 8.4(b). Mr. Kane notes that he has not been charged with or convicted of a federal crime related to his tax returns or his personal bankruptcy filings. Mr. Kane asserts that there is no evidence in the record upon which the hearing judge could conclude that he committed a federal crime in connection with his bankruptcy filings and tax returns. Mr. Kane notes that federal crimes require an element of scienter and it must be proven that the defendant committed such crimes "knowingly and willfully." "Knowingly" is defined as "acting intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness." Leonard B. Sand, *et al.*, Modern Federal Jury Instructions, Criminal, No. 3A-1, 3A-3 (2018). Similarly, "willfully" requires a person to "act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids . . . . [T]he conduct was not 'willful' if it was due to negligence, inadvertence, or mistake." *Id.* at 3A-20.

To support his conclusion that Mr. Kane's conduct in his personal bankruptcy constituted a criminal action in violation of Rule 8.4(b), the hearing judge cited to our

55

decision in *Attorney Grievance Commission v. Fraidin*, 438 Md. 172 (2014). In that case, we upheld the hearing judge's finding that respondent violated Rule 8.4(b) when he assisted his wife with the preparation of bankruptcy documents which included false statements under oath that she worked for the respondent's law firm and received a monthly income from his law office of $3,000.00 per month, when in fact she was never employed by the law firm and never received any wages. *Id.* at 207. As evidence of her wages, Mrs. Fraidin supplied fabricated "paychecks," which were drawn from the respondent's IOLTA account. *Id.* at 180. In *Fraidin*, we upheld the hearing judge's conclusion that respondent utilized his trust account funds to commit bankruptcy fraud by knowingly and intentionally fabricating paychecks for his wife drawn from his IOLTA account for the sole purpose of misrepresenting to the bankruptcy court that his wife was gainfully employed so that his wife would qualify for a Chapter 13 reorganization. *Id.* at 203–06.

In addition to *Fraidin*, Bar Counsel also urges us to rely upon *Attorney Grievance Commission v. Byrd*, 408 Md. 449 (2009), where we upheld a finding that respondent violated Rule 8.4(b) and 8.4(c) with respect to his misconduct in connection with his bankruptcy matter. In *Byrd*, the respondent's creditor had filed an involuntary bankruptcy action against the respondent, seeking to liquidate assets to pay the creditor's debt. *Id.* at 460. In that case, we found multiple instances of intentional, dishonest misconduct by respondent, including willful and intentional failure to cooperate with the bankruptcy trustee, and multiple contempt orders entered by the bankruptcy judge over a seven-year time span, as well as several orders to compel certain action, which were disregarded by respondent,

and two underlying determinations by the bankruptcy court that the respondent's misconduct was "willful" and constituted "bad faith," resulting in sanctions. *Id.* at 482.

The hearing judge in that case found that respondent's reports to the bankruptcy court were false, and that respondent knew they were false when he filed them. *Id.* at 464. In reaching this conclusion, the hearing judge relied upon the record of the bankruptcy proceedings, as well as the extensive testimony of the Trustee that as a Chapter 11 debtor, and later as a Chapter 13 debtor, respondent failed and refused to file monthly operating reports indicating the assets coming in and accounts receivable, and the cash flow and expenses of the business, and that respondent's monthly operating reports were "grossly inaccurate, deceptive [] and misleading." *Id.* at 481. Based upon the extensive testimony of the Trustee, the hearing judge determined that respondent "violated 18 U.S.C. § 1001 (making it a crime to falsify or conceal a material fact, or to make a false statement or provide a false document to the government or a government agency) and 18 U.S.C. § 1621 (prohibiting perjury)." *Id.* Based upon the evidence, we found clear and convincing evidence to support the conclusion that the respondent violated Rule 8.4(b). *Id.* at 482. We also found that, based upon the multiple contempt findings, respondent's willful misconduct in flagrantly disobeying court orders and the rules of the bankruptcy court "manifestly involved dishonesty and was prejudicial to the administration of justice" in violation of Rule 8.4(c) and (d). *Id.*

In this case, unlike *Fraidin* and *Byrd,* our independent review of the record leads us to conclude that while Mr. Kane was incompetent, uninformed, and negligent, his actions were not taken with an intent to defraud the Bankruptcy Court. Mr. Kane brought his

personal bankruptcy to the Trustee's attention at the lunch break on the first day of the Adversary Proceeding against him. The colloquy between Mr. Kane, the Trustee, and the bankruptcy judge demonstrates that while Mr. Kane's failure to disclose the matter in his bankruptcy petition was uninformed and inconsistent with the requirements of the Bankruptcy Code, it was not undertaken with an intent to defraud the Bankruptcy Trustee or the Bankruptcy Court. Mr. Kane explained to the bankruptcy judge that he was trying to keep his "professional matters" out of his bankruptcy for "personal privacy reasons." He also testified that he did not think he needed to identify the Adversary Proceeding because he thought that only his clients had monetary risk and that the claims against him were "inchoate claims." Again, while Mr. Kane's decision was without legal merit and demonstrates his lack of competence on bankruptcy-related matters, we do not find, based upon this record, that Mr. Kane had the requisite intent to commit a criminal act. Similarly, while the record reflects that Mr. Kane filed serial bankruptcies with schedules containing incorrect and incomplete information, his conduct lacks a knowing or willful intent to engage in bankruptcy fraud.[25]

---

[25] Our finding that Mr. Kane's bankruptcy filings fall short of criminal misconduct should not be construed as condoning this behavior. As noted *supra*, we have upheld the hearing judge's conclusion that Mr. Kane's inaccurate, serial filings violated Rule 3.3 (Candor Toward the Tribunal). To be sure, Mr. Kane's bankruptcy schedules are replete with inaccurate information. For example, on Mr. Kane's February 2014 bankruptcy petition, on Schedule B, he stated that there was $100 in his Bank of America checking account when his bank records reflected a balance of $1,239.37 in the account. Mr. Kane testified that he was accounting for monies that he knew were already obligated elsewhere. The hearing judge noted that notwithstanding Mr. Kane's explanation, the account always stayed above $100 for the relevant period. The hearing judge also correctly noted that Mr. Kane's personal property values and personal expenses changed with each filing, and there are unexplained discrepancies in the schedules associated with his serial filings. For

Although we find that Mr. Kane should have disclosed the Adversary Proceeding and identified the Trustee as an unsecured creditor and should have been more diligent and accurate with his schedules, there is no evidence that his actions rise to the level of criminal conduct involved in *Fraidin* and *Byrd.* Although Mr. Kane's filings reflect incompetence and negligence, we do not find by clear and convincing evidence that his conduct constitutes a criminal act.

Similarly, based upon our independent review of the record, we do not find by clear and convincing evidence that Mr. Kane's act of deducting his internet and cell phone expense as business expenses, which included family members' coverage, constitutes a criminal act. While the Internal Revenue Service may take a different approach or reach a different conclusion, based upon the record before us, we sustain Mr. Kane's exception that his cell phone and internet deductions fall short of criminal activity.[26]

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonestly, fraud, deceit or misrepresentation[.]" The hearing judge

---

example, the schedules on Mr. Kane's June 2016 filing identified household goods and furnishings valued at $1,500, electronics valued at $600, and clothes valued at $250, and also identified office expenses and personal expenses, none of which had been identified on his 2014 or 2015 bankruptcy petitions. In comparing Mr. Kane's serial bankruptcy filings, although Mr. Kane filed incomplete and inconsistent schedules, our review of the record reveals that these filings, while incompetent and careless, do not evidence an intent to defraud creditors or commit bankruptcy fraud.

[26] At oral argument, Mr. Kane's attorney argued that Mr. Kane uses Turbo Tax, which shows that he lacked a criminal intent. He plugs in his expenses and the software inserts the deduction. Obviously, Turbo Tax does not independently verify the expenses and the individual using the software must accurately enter expenses incurred and properly associated with a legitimate business deduction.

concluded that the conduct that he found violated Rule 8.4(b) also constitutes a violation of Rule 8.4(c). Mr. Kane has excepted to this conclusion, asserting that the hearing judge's legal conclusion of this violation was based solely upon the conclusion that Mr. Kane committed a federal criminal act.[27] Mr. Kane argues that he lacked the requisite intent to engage in fraudulent or dishonest conduct. We will sustain Mr. Kane's objection on this point.

As noted above, with respect to Mr. Kane's bankruptcy filings, while the filings were careless and reflect a lack of competence, we do not find by clear and convincing evidence that Mr. Kane's mistakes and inconsistencies were intentionally dishonest conduct or were undertaken for the purpose of defrauding or deceiving the Bankruptcy Court.

With respect to his tax deductions, Mr. Kane asserts that he is a sole practitioner who operates from a virtual office. Mr. Kane took a deduction on his tax return for his cell phone usage, which also included cell phone service of family members. At oral argument, Mr. Kane's counsel stated that there is nothing in the record upon which the hearing judge could find that taking a cell phone business deduction for his family's coverage constitutes tax fraud, or that the IRS would consider the deduction unacceptable in an audit. Based upon the record before us, we do not find clear and convincing evidence that Mr. Kane's

---

[27] In his conclusions of law, the hearing judge did not describe his basis for concluding that Mr. Kane violated Rule 8.4(c) other than simply stating that "each of the listed violations of Rule 8.4(b) also constitutes a violation of Rule 8.4(c)."

cell phone deduction on his tax returns constitutes intentionally dishonest or fraudulent conduct in violation of Rule 8.4(c).

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice[.]" The hearing judge concluded that Mr. Kane violated Rule 8.4(d) when he failed to disclose the Adversary Proceeding and list the Trustee as an unsecured creditor in his 2015 bankruptcy filing because it wasted judicial resources, and was therefore prejudicial to the administration of justice. The hearing judge also concluded that Mr. Kane's conduct resulted in the Bankruptcy Court wasting a half day of its valuable trial time to conduct a trial in a stayed proceeding. Moreover, Mr. Kane's conduct unnecessarily caused a delay in the Adversary Proceeding, which could have been avoided by listing the claim in his 2015 bankruptcy petition and schedules as is required by the Bankruptcy Code. Mr. Kane filed an exception to this conclusion but did not specify any basis for his exception. We overrule the exception. Mr. Kane's failure to identify the Adversary Proceeding on his personal bankruptcy certainly caused a waste of judicial resources and delay, which could have been avoided.

The hearing judge further concluded that Mr. Kane's overall conduct brings the legal profession into disrepute in violation of Rule 8.4(d). We find that the conclusion is supported by clear and convincing evidence and affirm the hearing judge's conclusion.

### Md. Rule 19-407 (Attorney Trust Account Record Keeping)

At the attorney grievance hearing, Bar Counsel contended that Mr. Kane violated Md. Rule 19-407 as it relates to his representation of Mr. Arvin. Specifically, Bar Counsel argued that Mr. Kane violated the Rule because he either failed to create the record as

required by the Rule or failed to maintain records for the requisite period of time.  Although the hearing judge concluded that Mr. Kane failed to produce the records at trial, the hearing judge was not convinced by clear and convincing evidence that the reason for the failure to produce the documents (its own separate violation of the Rules) was because Mr. Kane has either failed to create or maintain the records, as opposed to his failure to retrieve them.  The hearing judge noted that Mr. Kane testified to difficulty with his computers.  Bar Counsel did not file an exception to this conclusion.  Although Mr. Kane filed an exception, stating that, while he could have done a better job of managing his law office and personal finances, there was no evidence to support a conclusion that he willfully mismanaged his bookkeeping.  However, since no such legal conclusion was reached by the hearing judge and no violation was found, we overrule Mr. Kane's exception.

### *Mitigating Factors*

In *Attorney Grievance Commission v. Hodes,* we noted that the following may be considered as mitigating factors:

> Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

441 Md. 136, 209 (2014) (citing *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 407 (2011) (citations omitted)).

The hearing judge found that Mr. Kane proved one mitigating factor by a preponderance of the evidence. Mr. Kane testified that during the time period of this case, he has had personal problems with caring for his ailing in-laws with whom he was very close. Their failing health and ultimate deaths greatly affected Mr. Kane emotionally and required significant amounts of his time and energy for their care. The Court found Mr. Kane credible on this point. No exceptions were filed by Bar Counsel to this finding. Based upon our independent review of the record, we agree with the hearing judge's finding.

### *Aggravating Factors*

The hearing judge found clear and convincing evidence that five aggravating factors were present: (1) prior discipline; (2) a pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge the wrongful nature of conduct; and (5) substantial experience in the practice of law.[28] We agree with the hearing judge's conclusions, which are summarized as follows.

---

[28] We have recognized the following aggravating factors in considering sanctions in attorney grievance proceedings:

| | |
|---|---|
| (1) | Prior disciplinary offenses; |
| (2) | A dishonest or shellfish motive; |
| (3) | A pattern of misconduct; |
| (4) | Multiple offenses; |
| (5) | Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; |
| (6) | Submission of false evidence, false statements, or other deceptive practices during the disciplinary process; |
| (7) | Refusal to acknowledge the wrongful nature of conduct; |
| (8) | Vulnerability of the victim; |
| (9) | Substantial experience in the practice of law; |

The hearing judge noted that Mr. Kane received a reprimand from the Attorney Grievance Commission on January 18, 2017, for violating Rules 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.16(d) (Terminating representation), and 3.4(d) (Fairness to opposing counsel). The hearing judge noted that in that matter, Mr. Kane failed to provide competent and diligent representation, and failed to adequately communicate with his client. Specifically, Mr. Kane failed to adhere to discovery guidelines, comply with opposing counsel's discovery requests, and communicate with his client regarding the scope and ramifications of his actions.

Bar Counsel also requested that the hearing judge consider a warning from the Attorney Grievance Commission dated August 30, 2016, for alleged violations of Rules 1.3 (Diligence) and 1.4 (Communication). The hearing judge concluded that it would not consider the warning as part of an aggravating factor because the warning explicitly provided "[a] warning is not discipline under Maryland Rule 19-700[.]" Bar Counsel excepted to the hearing judge's failure to find Mr. Kane's prior warning to be an aggravating factor under the circumstances. We agree with Bar Counsel and sustain Counsel's exception. Although the warning is not discipline, as set forth below, it evidences a pattern of misconduct.

---

(10)   Whether he or she displayed indifference to making restitution; and
(11)   [I]llegal conduct.

*See Attorney Grievance Comm'n v. Sperling*, 434 Md. 658, 676–77 (2013) (citing Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions).

The warning that Bar Counsel issued on August 30, 2016, stated that although the complaint made against Mr. Kane had been dismissed:

> We did determine, however, that you violated Maryland Lawyers' Rules of Professional Conduct 1.3 and 1.4. You violated Rule 1.3 by failing to act with reasonable diligence and promptness in pursuing the return of your client's $20,000 deposit made toward the purchase of a home. You violated 1.4 by failing to keep your client reasonably informed of the status of her case and failing to explain the case to the extent reasonably necessary to permit her to make informed decisions regarding your representation. We are issuing a warning to you for those violations.
>
> A warning is not discipline . . . but should guide you in the future to avoid a complaint of a similar nature that might result in a disciplinary sanction.

This Court has recognized that a warning is "an admonition against repetition of conduct." *Attorney Grievance Comm'n v. Stolarz*, 379 Md. 387, 406 (2004). We agree with Bar Counsel that the conduct described in the warning is similar to the conduct at issue in the Lonergan and Arvin matters. While the warning was not a disciplinary action, it is nonetheless evidence of a pattern of misconduct, which is an aggravating factor in determining the appropriate sanction. *See Attorney Grievance Comm'n v. Kirwan*, 450 Md. 447, 463–64 (2016) (agreeing with hearing judge's conclusion that the attorney's prior warning supported a finding that the attorney had engaged in a pattern of misconduct); *Attorney Grievance Comm'n v. Hill*, 398 Md. 95, 104–05 (2007) (considering the attorney's two prior warnings as "prior grievance history" in determining the appropriate sanction to impose); *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 230 (2006) (considering a warning to be "prior history" with the Commission). Accordingly, there is clear and convincing evidence that the warning issued to Mr. Kane should be considered by the Court as a pattern of misconduct.

In addition to the prior disciplinary action, the hearing judge concluded that Bar Counsel had established, by clear and convincing evidence, a pattern of misconduct and multiple offenses. The hearing judge noted the multiple rules violated in connection with Mr. Kane's representation of the Lonergans and Mr. Arvin, as well as the violations found in connection with Mr. Kane's personal bankruptcy and tax filings. The hearing judge found that at the December 2018 hearing, Mr. Kane failed to acknowledge the wrongful nature of his conduct, instead maintaining that there was no conflict of interest and that the clients should have contacted him if they were uninformed about their cases. The hearing judge further noted that Mr. Kane has substantial experience in the practice of law, having been admitted in 1983.

## IV. Sanction

The purpose of a sanction in an attorney discipline case is not so much to punish the attorney as "to protect the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Greenleaf*, 438 Md. 151, 163 (2014) (quoting *Attorney Grievance Comm'n v. Worthy*, 436 Md. 633, 643 (2014)). The sanction imposed depends on the facts and circumstances of each case, and in arriving at an appropriate sanction, we "consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 284 (2011). Accordingly, the sanction imposed should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537 (2003).

Bar Counsel has recommended that we disbar Mr. Kane from the practice of law. In support of this recommendation, Bar Counsel notes that Mr. Kane violated numerous Rules in his representation of the Lonergans and Mr. Arvin, as well as Bar Counsel's associated investigation into those complaints, to wit: Rules 1.1 (Competence), 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4 (Communication), 1.7 (Conflict of Interest; General Rule) (as to the Lonergans), 1.16 (Declining or Terminating Representation), 3.4 (Fairness to Opposing Party and Attorney), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct). Bar Counsel also notes Mr. Kane's violation of Rule 3.3 (Candor Toward the Tribunal) and 8.4(a) and (d) (Misconduct) in connection with his personal bankruptcy. Bar Counsel contends that in addition to Mr. Kane's misconduct, there are substantial aggravating factors, including prior misconduct, Mr. Kane's substantial experience in the practice of law, and his refusal to acknowledge the wrongful nature of his conduct.

To support their recommended sanction of disbarment, Bar Counsel relies upon the hearing judge's findings that Mr. Kane violated Rule 8.4(b) and 8.4(c) in connection with his bankruptcy filings and tax deduction for cell phone expenses. Bar Counsel relies upon *Fraidin*, 438 Md. 171, and *Byrd*, 408 Md. 449. As noted *supra,* we sustained Mr. Kane's exception to the hearing judge's conclusion that Mr. Kane's conduct in his personal bankruptcy and his tax filings violated Rule 8.4(b) and (c). At oral argument, in response to the Court's questions, Bar Counsel admitted that if the Court were only to consider the misconduct in the *Lonergan* and *Arvin* cases, Bar Counsel would recommend an indefinite suspension. Bar Counsel stated that the "recommendation for disbarment is based on the

67

conduct in the Lonergan and Arvin matters, compiled with the Respondent's personal bankruptcy filings and tax returns."

Mr. Kane contends that the facts of this case do not support disbarment as Mr. Kane's conduct in his bankruptcy and tax filings were neither criminal, nor intentionally dishonest. Mr. Kane notes that cases where we have determined that the respondents have tax problems, but do not involve willful and intentional tax fraud, have not resulted in disbarment. Mr. Kane relies upon *Attorney Grievance Comm'n v. Gavin*, 350 Md. 176 (1998), in which the Court imposed a reprimand where the respondent failed to timely file his tax returns and failed to rectify his tax delinquencies. Mr. Kane also directs us to *Attorney Grievance Comm'n v. Worthy*, 436 Md. 633 (2014), where the Court imposed a six-month suspension for two separate convictions of failure to file tax returns amounting to over $70,000 in unpaid taxes. Mr. Kane asserts that he did not willfully evade paying taxes—rather, he took some minor deductions that might arguably seem questionable. Mr. Kane asserts that this conduct was not criminal and does not support disbarment. Mr. Kane further asserts that there is insufficient evidence to conclude that he knowingly and willfully committed fraud when he filled out his bankruptcy schedules and filed his income taxes. He states that there is no violation of Rule 8.4(b) or (c), although he admits that the evidence supports a finding that he acted out of ignorance, mistake, carelessness, or negligence.

With respect to the findings associated with his representation of the Lonergans and Mr. Arvin, Mr. Kane argues that the case law supports either a reprimand or a "short suspension." Mr. Kane contends the facts of this case are more similar to *Attorney Grievance Commission v. Cohen*, 361 Md. 161 (2000), where we imposed an indefinite

suspension after finding violations of Rules 1.1, 1.3, 1.4, 8.1(a), and 8.4(c) and (d) for failing to keep clients informed regarding their cases, lack of competence, and making false statements during a disciplinary investigation.

In light of our sustaining Mr. Kane's exceptions to the Rule 8.4(b) and (c) conclusions of law, we agree that the violations in this matter support the imposition of an indefinite suspension. Our decisions in prior attorney discipline cases support suspending Mr. Kane indefinitely, with the right to apply for reinstatement. In cases similar to Mr. Kane's where the attorney's disciplinary actions do not involve dishonesty, the sanction has often been indefinite suspension. *See Attorney Grievance Comm'n v. Kirwan*, 450 Md. 447, 466 (2016); *see also Attorney Grievance Comm'n v. Green*, 441 Md. 80, 101–102 (2014) (collecting cases). Indefinite suspension ensures that Mr. Kane is not permitted to practice law until this Court is satisfied that he is able to do so consistent with the MLRPC. We have reiterated that indefinite suspension is not permanent, so Mr. Kane may apply for reinstatement under Maryland Rule 19-752. However, we decline to set a minimum length for this suspension because there is nothing in the record that would allow this Court to "divine an appropriate minimum 'sit-out' period." *Kirwan*, 450 Md. at 467, quoting *Green*, 441 Md. at 102. We would also note that while we did not find a Rule 8.4(b) or (c) violation with respect to Mr. Kane's bankruptcy filings and tax filings, any future filings by Mr. Kane would be considered by the Court as part of any consideration on reinstatement. The suspension shall begin 30 days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT,**

69

**INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d) FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EUGENE IGNATIUS KANE, JR.**